WENDY S. GERBOTH
Attorney At Law
California Bar No. 167687
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 699-5969
Facsimile: (619) 699-5967
wendysgerboth@hotmail.com

Attorney for Defendant Michael Vannak Khem Misiewicz

UNSEALED PER [BT] Order

FILED
NOV 7 2013
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY           DEPUTY

**UNDER SEAL**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> MICHAEL VANNAK KHEM MISIEWICZ (2), ) <br> ) <br> Defendant. ) <br> ) <br> ) | Criminal No. 13CR3782-JLS <br><br> SUPPLEMENTAL SUBMISSION IN SUPPORT OF APPLICATION FOR APPOINTMENT OF COUNSEL UNDER 18 U.S.C. § 3006A |

Mr. Misiewicz is charged with co-defendant Leonard Glenn Francis in a one count information with conspiracy to commit bribery in violation of 18 U.S.C. § 371. He has entered a not guilty plea. He seeks appointment of counsel under 18 U.S.C. 3006A. He supplements the previously established record with the following points and authorities.

///
///
///

## I.

## STATEMENT OF FACTS

### A. Summary Of Allegations

The government's investigation in this case focused on Francis and his company, Glenn Defense Marine (Asia) ("GDMA"), a U.S. Navy Contractor that has provided husbanding services to the Navy for more than 25 years. The government alleges GDMA engaged in fraudulent practices that resulted in over billing the U.S. Navy millions of dollars. The allegations in the complaint pertaining to Mr. Misiewicz focus on a two year period between 2010 and 2012, during which time he served, first, as the Commanding Officer of the USS Mustin deployed in the Seventh Fleet, and later as the Deputy Operations Officer for the US Commander Seventh Fleet aboard the USS Blue Ridge. During this time it is alleged Mr. Misiewicz provided "Confidential" information to Francis and GDMA, and used his influence to steer port visits of U.S. ships to GDMA's "Pearl Ports" in Asia; that is, those ports where it was most profitable for GDMA to provide husbanding services. It is alleged that Mr. Misiewicz, a decorated officer who has served more than 28 years in the Navy, was bribed with Lady Gaga tickets, airfare, hotel stays and prostitutes.

### B. The Anticipated Cost Of Mr. Misiewicz's Defense

The defense of this case will require review of massive amounts of discovery, significant motions practice and extensive investigation here and in Asia.[1] A significant amount of discovery

---

[1] The declarations of attorneys Mark Adams and Merle Schneidewind (hereinafter, "Adams Decl." and "Schneidewind Decl."), are attached as Exhibits "A" and "B." In their declarations Mr. Adams and Mr. Schneidewind, experienced counsel who have defended similar cases, have offered their opinion on the anticipated course of this litigation.

will likely involve confidential or classified government information, and it is anticipated that the government will resist production of that discovery. Adams Decl., ¶ 2; Schneidewind Decl., ¶ 2. It will likely be necessary to research and litigate motions about issues arising under the Classified Information Procedures Act, 18 U.S.C. App. 3 § 1 et seq., as well as other pretrial motions. Adams Decl. ¶ 2. Many of the potential witnesses are in Asia or in the military and scattered across the globe. Adams Decl., ¶ 2; Schneidewind Decl., ¶ 3. Some evidence may need to be taken in foreign jurisdictions. Adams Decl., § 5. It might take tens of thousands of dollars to locate, interview and call to testify a single witness from a foreign jurisdiction. See, Schneidewind Decl., ¶ 4. Experienced counsel have opined that to retain counsel in this case could result in legal fees up to between $750,000 and $1,000,000. Adams Decl., ¶ 5; Schneidewind Decl., ¶ 2.

## II.

## ARGUMENT

**A.     Standards For Appointment Of Counsel**

The Criminal Justice Act ("CJA") provides for appointment of counsel "for any person financially unable to obtain adequate representation. . . ." 18 U.S.C. § 3006A(a). "Financial inability to obtain counsel is not the same as being indigent or destitute, but the defendant has the burden of establishing that he or she is financially unable to obtain counsel." United States v. Fincher, 538 F.3d 868, 875 (8th Cir. 2008)(citing United States v. Brockman, 183 F.3d 891, 897 (8th Cir. 1999); United States v. Harris, 707 F.2d 653, 660(2d Cir. 1983) (Financial inability to retain counsel "means something less than indigency or destitution."). "Any doubts as to a person's eligibility

should be resolved in the person's favor; erroneous determinations of eligibility may be corrected at a later time." Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases ("Guide"), Vol. 7, § 210.40.30(b).[2]

The Guide provides:

> A person is "financially unable to obtain counsel" within the meaning of 18 U.S.C. § 3006A(b) if the person's net financial resources and income are insufficient to obtain qualified counsel. In determining whether such insufficiency exists, consideration should be given to:
>
> (1) the cost of providing the person and his dependents with the necessities of life, and
>
> (2) the cost of the defendant's bail bond if financial conditions are imposed, or the amount of the case deposit defendant is required to make to secure release on bond.

Id. at § 210.40.30(a). Here, the Court should bear in mind that $100,000 of Mr. Misiewicz's assets are tied up to secure his release on bond. In addition, Mr. Misiewicz supports his wife and four minor children, who maintain a separate home in Illinois as the couple go through their divorce. Mr. Misiewicz, himself, has been living in Colorado Springs in a rented room with house mates. He has been paying $450 per month, which included his utilities, telephone, cable television and internet service. Mr. Misiewicz intends to continue to live frugally, but his expenses will be considerably higher in San Diego.

**B.      Mr. Misiewicz Is Financially Unable To Retain Counsel**

       **1.   Mr. Misiewicz Does Not Have Sufficient Assets Or Income To Fund His Defense**

---

[2] When counsel is appointed and it is later determined the defendant has the ability to pay all or part of the cost of his/her defense, the CJA makes provision for the reimbursement of funds. 18 U.S.C. § 3006A(f).

Experienced counsel have opined that the fees and costs in this case could be as high as $750,000 to $1,000,000. Adams Decl., ¶ 5; Schneidewind Decl., ¶ 6. No matter what financial data in the record the Court considers, Mr. Misiewicz does not have the resources to fund his defense. Mr. Misiewicz submitted to the Court (and to the government) a financial affidavit on October 21, 2013.[3] That affidavit clearly demonstrates that Mr. Misiewicz could only come up with a fraction of those estimated fees and costs. Moreover, even if the Court uses the numbers contained in the Pretrial Services ("PTS") report, and assumes that Mr. Misiewicz has control over his entire net worth, he would still fall far short of being able to finance the potential cost of his defense. And, of course, Mr. Misiewicz's pending divorce proceedings make it likely he will probably only be left with, at most, half of that net worth.

**2. Mr. Misiewicz's Assets Are Not Available To Him**

Not only are Mr. Misiewicz's assets insufficient to fund his defense, they are also not available. As has previously been noted on the record, the Dissolution Action Stay in Mr. Misiewicz's divorce proceedings precludes him from "transferring, encumbering, concealing, destroying, spending, damaging or in any way disposing of any property, without the consent of the other party or an order of the court," with several inapplicable exceptions.[4]

---

[3] Mr. Misiewicz previously submitted a financial affidavit to the district court in Colorado. However, that affidavit was hastily prepared while Mr. Misiewicz was in custody and did not have access to his financial records. Accordingly, pursuant to an Order of the Court at the October 10, 2013 hearing, Mr. Misiewicz submitted a new financial affidavit and supporting documentation.

[4] Both the Court and the government have previously been provided with a copy of the Dissolution Stay.

Although Mrs. Misiewicz agreed to liquidate a mutual fund so that Mr. Misiewicz could post his $100,000 bond,[5] she has given no indication that she would agree to the liquidation or encumbrance of assets to pay any portion of Mr. Misiewicz's legal fees. The government has argued that the Court's "default" position should assume Mrs. Misiewicz's willingness to allow the couple's assets to be used for legal fees. However, there is a significant difference between allowing an asset to be liquidated for the purpose of securing a bond, and liquidating it or encumbering it to fund Mr. Misiewicz's defense. The funds being used to secure the bond will eventually be released; if the asset is used to fund Mr. Misiewicz's defense it will be gone. There has been no indication that Mrs. Misiewicz is willing to consent to the liquidation or encumbrance of assets, and it should not be assumed. See, United States v. Lexin, 434 F. Supp. 2d 836, 843 (S.D. Cal. 2006) (community property assets should not be considered when determining eligibility for appointment of counsel unless the spouse consents).[6]

    3.    **Mr. Misiewicz's Assets Cannot Be Readily Liquidated**

Even if the Dissolution Stay did not preclude Mr. Misiewicz from liquidating his assets, (and it does), there would still be impediments to Mr. Misiewicz using his assets to retain counsel. For example, although Mr. Misiewicz and his wife own real property, they

---

[5] The $100,000 that secures Mr. Misiewicz's bond is part of the net worth determination in the PTS report. It is clearly unavailable to be used for attorneys fees.

[6] The government also argued at the hearing that the Court should consider available in their entirety those jointly held assets over which Mr. Misiewicz exercises "dominion and control" and "can dispose of unilaterally." There are no assets he can dispose of unilaterally due to the Dissolution Stay.

are upside down on the mortgage of one piece of property. On another property that is under contract for sale they owe more on the contract than the property is worth.

Mr. Misiewicz has used the county appraisal for tax purposes to value his real property. Absent a formal appraisal, that is the only actual, property specific valuation. The government urges the Court to look to commercially available tools such as Zillow to determine the properties' fair market values. However, those numbers are imprecise, not property specific and there is no reason to believe that in a short sale of the property Mr. Misiewicz would obtain fair market value. Further, there would be costs associated with the sale of the property that would reduce the proceeds available for legal fees. Similarly, if Mr Misiewicz were to attempt to liquidate his retirement accounts, there would be withdrawal restrictions, penalties and tax consequences that would reduce the amount available after liquidation. Accordingly, to the extent the Court considers these assets, it should note that their entire value is not available in the event of liquidation

## III.
### CONCLUSION

Mr. Misiewicz respectfully requests that the Court grant his request for appointment of counsel.

Respectfully Submitted

*/s/ Wendy Gerboth*

Dated: November 1, 2013

Wendy S. Gerboth
Attorney for Mr. Misiewicz

# EXHIBIT "A"

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL VANNAK KHEM MISIEWICZ(2),<br><br>    Defendant. | CASE NO. 13CR3782-JLS<br><br>DECLARATION OF ATTORNEY<br>MERLE N. SCHNEIDEWIND |

I, Merle Schneidewind, having been duly sworn, depose and state:

1) I am an attorney duly licensed to practice before all of the courts of the State of California, the United States District Court for the Southern District of California and the United States Court of Appeals for the Ninth Circuit. I have practiced criminal defense for over forty years, handling both retained cases and cases appointed under the Criminal Justice Act. During my career I have defended cases involving alleged crimes by defendants in the military. As a result, I am familiar with special issues arising in the course of such cases, such as the difficulties involved in gaining access to classified information.

1  2) I have reviewed the complaint in this case. I believe that to provide effective assistance of counsel and an adequate defense it is clear that attorneys fees could easily exceed a minimum of $750,000, with additional costs and expenses of at least $100,000. I also believe that appointment of co-counsel will be necessary, as it is unlikely that one attorney alone will be able to devote the time needed to defend this case.

2) This case will require litigation to gain access to classified information and the review of a multitude of government regulations and hundreds of thousands of documents. The government will likely oppose disclosure of much of the information and documentation needed by the defense.

3) This case will also entail extensive investigation. Witnesses are located around the world.

4) As one example of the work that could be required in this case, I have focused on the allegations that Mr. Misiewicz notified a port contractor in charge of providing husbanding services that a ship would be docking at that port in advance of the time permitted by Naval regulations. The defendant might defend himself by demonstrating it was safer for the ships to provide the contractor with more advanced notice of a ship's arrival. As counsel, to support this fact, I would have an investigator interview, and then call as a witness, the contractor in charge of providing security services for the USS Cole that was bombed in port in Yemen, killing 17 servicemen. Establishing this one fact alone could take tens of thousands of dollars in fees and investigative services.

5) As another example of work necessary for the defense of this case, it is likely that Mr. Misiewicz also had only a part in the decision making process as to which ports ships would be directed to. Other decision makers will have to be located and interviewed.

6) As set forth above, I again conclude that attorneys fees to provide an

2

adequate defense in this case could easily amount to $750,000 with an additional $100,000 in expenses.

I declare, under the penalty of perjury, that the above is true and correct to the best of my information and belief on this 30th day of October 2013 in San Diego, California.

Dated: 10/30/13

Respectfully Submitted,

Merle N. Schneidewind, Esq.

# EXHIBIT "B"

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>v.<br><br>MICHAEL KHEM VANNAK,<br>MISIEWICZ(2)<br><br>　　　Defendant. | CASE NO. 13CR3782-JLS<br><br>DECLARATION OF<br>MARK F. ADAMS |

I, Mark F. Adams, having been duly sworn, depose and state:

1) I am an attorney duly licensed to practice before this Court, the United States Court of Appeals for the Ninth Circuit and the Supreme Court of the United States. I have been practicing criminal law for 32 years, handling both retained cases and cases appointed under the Criminal Justice Act. In the last year I defended through trial a retained case involving allegations the defendant bribed United States Navy officials. I have reviewed he complaint in this matter, and have the following observations about what I believe would be required for effective representation of this defendant.

1    2) There will likely be an extraordinary amount of discovery, including discovery from multiple e-mail accounts, extensive surveillance evidence, documents, photograps and electronic data. Judging from the nature of the allegations, the defense will need to seek discovery of classified and unclassified information from the National Security Administration, Naval Investigative Services and other clandestine agencies which will implicate (and involve litigation over) the Classified Information Procedures Act 18 U.S.C. App. 3 § 1 et. seq. Discovery litigation is likely to be extensive and time consuming. Government resistance is to be expected.

3) Due to the complexity of the legal and factual issues, the defense of this case will require extensive investigation. A significant portion of this investigation will be overseas, as it appears many of the key locations and witnesses are located throughout Asia, including Japan, Thailand, Hong Kong and Malaysia. A team of investigators who speak various foreign languages will be needed to properly manage the investigation. Associate counsel and local investigators on the ground in the foreign venues will have to be retained and will have to coordinate with the chief investigator in San Diego.

4) There is little doubt that counsel and investigators will be required to submit to and qualify for a United States government security clearance in order to defend the client.

5) In my view, qualified retained counsel would charge between $400 to $800 per hour, plus expenses. If retained I would insist that the client engage co-counsel as one attorney alone would be hard pressed to properly defend the case. Co-counsel would be similarly compensated and associate counsel should be used for research and discovery review at lower hourly rates. If this case were to proceed to trial it is my opinion that the defense could cost in excess of one

million dollars in attorneys fees, costs of investigation and related expenses, bearing in mind the international nature of the investigation. If foreign defense witnesses were needed, the defense would have to bear the cost of bringing each of those witnesses to court. Litigation may be required to address allowing foreign witnesses into the United States to testify. In some cases, the government might require bonded and licensed investigators to accompany the foreign witness while in the United States. And litigation in foreign countries might be necessary to compel attendance of witnesses at foreign depositions or to attend trial proceedings in the United States.

   I declare, under the penalty of perjury, that the above is true and correct to the best of my information and belief on this 30th day of October 2013 in San Diego, California.

_____
MARK F. ADAMS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL VANNAK KHEM MISIEWICZ (2),<br><br>            Defendant. | Criminal No. 13CR3782-JLS<br><br>PROOF OF SERVICE |

I, WENDY S. GERBOTH, certify:

1. I am over eighteen years of age, a United States citizen, a resident of the County of San Diego, State of California. I am not a party to the above-titled action.

2. My business address is 964 Fifth Avenue, Suite 214, San Diego, California 92101.

3. I caused service of SUPPLEMENTAL SUBMISSION IN SUPPORT OF APPLICATION FOR APPOINTMENT OF COUNSEL UNDER 18 U.S.C. § 3006A on the Court and by hand delivery to the Clerk's Office and to Attorney for the Plaintiff United States of America by hand delivery to the United States Attorney's Office.

I certify under penalty of perjury that the foregoing is true and correct. Executed on November 1, 2013 at San Diego, California.

_____
WENDY S. GERBOTH