MARK F. ADAMS
Law Offices of Mark F. Adams
California Bar No. 97377
964 Fifth Avenue, Suite 335
San Diego, CA 92101
Telephone: (619)239-4344
Facsimile: (619)544-1429
markadamsesq@gmail.com

WENDY S. GERBOTH
Attorney At Law
California Bar No. 167687
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 699-5969
Facsimile: (619) 699-5967
wendysgerboth@hotmail.com

Attorneys for Defendant Michael Vannak Khem Misiewicz

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 13CR3782-JLS |
| | ) | Criminal No. 15CR00033-JLS |
| Plaintiff, | ) | Date: March 27, 2015 |
| | ) | Time: 2:00 p.m. |
| v. | ) | |
| | ) | SUPPLEMENTAL MEMORANDUM OF |
| MICHAEL VANNAK KHEM MISIEWICZ, | ) | POINTS AND AUTHORITIES IN |
| | ) | SUPPORT OF MOTION FOR DISCOVERY |
| Defendant. | ) | |

**I.**

**STATEMENT OF FACTS**

**A.     Allegations and Procedural History**

The allegations in 13CR3782 and 15CR0033 (hereinafter, "Related Cases")[1] arise from an investigation by the Department of

---

[1] The government did not move to dismiss the Information in 13CR3782 when Commander Misiewicz was arraigned on the Indictment in 15CR00033. In subsequent correspondence the government has indicated it will not

Justice ("DOJ"), the Naval Criminal Investigative Service ("NCIS"), the Defense Contract Audit Agency ("DCAA") and Defense Criminal Investigation Service ("DCIS") that focused initially on Leonard Francis and his company Glenn Defense Marine Asia ("GDMA"). Francis and GDMA have conducted business with the Navy for more than 25 years. The investigation revealed that Francis and GDMA engaged in widespread fraud and corruption while providing ship husbanding services under contracts with the Navy. On January 15, 2015 Francis and GDMA pleaded guilty to conspiracy to commit bribery, bribery and conspiracy to defraud the United States.[2] The amount of loss to the United States admitted to in the Francis plea agreement was well in excess of $20 million.

In the course of the investigation into Francis and GDMA Commander Misiewicz became the subject of a bribery inquiry. The allegations in the Related Cases focus on the period between May 2010 and September 2013. During that time Commander Misiewicz served, first, as the Commanding Officer of the USS Mustin forward deployed in the Seventh Fleet, and later as the Deputy Operations Officer for the US Commander Seventh Fleet embarked aboard the USS Blue Ridge. During the course of his 28 years in the Navy, Commander Misiewicz's outstanding efforts were repeatedly recognized, including his award of the Legion of Merit in December 2012, an award normally reserved for

---

dismiss the Information in 13CR3782 until after trial.

[2] Defendants in six related cases arising from the same investigation have also pled guilty in this Court. *See United States v. Beliveau*, 13CR3781, *United States v. Aruffo,* 14CR1924, *United States v. Sanchez*, 13CR4287, and *United States v. Dusek,* 15CR0131, *United States v. Layug*, 14CR1354. Misiewicz is believed to be the only currently charged defendant in this court who has not pleaded guilty.

2

13CR3782-JLS
15CR0033-JLS

much more senior officers.

It is alleged that Commander Misiewicz was bribed with cash, gifts, travel expenses, entertainment and prostitutes.

**B.  Criminal Case No. 13CR3782**

On September 13, 2013 Commander Miseiwicz was charged along with co-defendant Leonard Francis in a sealed one count complaint with conspiracy to commit bribery in violation of 18 U.S.C. § 371.  That complaint was unsealed on September 17, 2013.  An information alleging conspiracy to commit bribery was filed on October 15, 2013 (hereinafter, "Information."  The same day Commander Misiewicz entered a not guilty plea.

The conspiracy is alleged to have begun in May 2010 and continued to December 2012.  The government alleges:

> It was the object of the conspiracy for FRANCIS to offer and provides things of value to or on behalf of MISIEWICZ, including travel expenses, entertainment, and prostitutes in return for MISIEWICZ providing classified and other internal U.S. Navy information to FRANCIS, and being influenced in the performance of his official acts.

*Information,* ¶ 6.  Two overt acts are alleged: Francis paying airfare for Commander Misiewicz to travel to Cambodia in June 2011 and Commander Misiewicz e-mailing Francis certain internal U.S. Navy ship movement schedules for on or about July 4, 2011.  *Id.*, ¶ 8.

**C.  Criminal Case No. 15CR00033**

On January 6, 2015 the government filed an indictment alleging one count of conspiracy to commit bribery (18 U.S.C. §§ 371)), seven counts of bribery (18 U.S.C. § 201(b)(2)(A) and (C)), and criminal forfeiture (28 U.S.C. 2461(c)) (hereinafter, "Indictment").  Commander Misiewicz was arraigned on the Indictment on January 16, 2015 and pled not guilty.

The dates of the alleged conspiracy are from on or about early 2011 to September 2013. *Indictment*, ¶ 8. As alleged in the Indictment:

> It was the object of the conspiracy for Misiewicz to provide Francis with classified and other proprietary, internal U.S. Navy information, to use his position and influence with the U.S. Navy to advocate for and advance the interests of Francis and GDMA, as opportunities arose, and in return for Francis, GDMA, and others to give things of value to or on behalf of MISIEWICZ, including cash, gifts, travel expenses, entertainment, and the services of prostitutes.

Indictment, ¶ 9. There are 24 overt acts alleged between February 2011 and July 19, 2013. They include allegations that Commander Misiewicz(1) provided classified navy ship schedules, and (2)advocated for routing U.S. Navy ships to ports that were most advantageous to Francis and GDMA. In the individual bribery counts it is alleged that Commander Misiewicz received travel expenses, cash, hotel stays and prostitutes in return for being influenced in his official duties.

## II.

### DISCOVERY REQUESTS

At this time Commander Misiewicz withdraws the discovery motion previously filed in 13CR3782 on November 26, 2013 (docket number 66). Further, with respect to the discovery motion filed in 15CR00033 on January 23, 2015 and filed concurrently today in 13CR3782, the defense will not pursue discovery items 9-13, and 18 at this time, but reserves the right to pursue some or all of them at a later date. Currently at issue are Requests 1-8, 14-17, 19 and 20.[3]

///

///

---

[3] For ease of reference these discovery requests are set forth in Exhibit "A," attached hereto.

## III.

## THE ITEMS IN DEFENDANT'S MOTION FOR DISCOVERY ARE MATERIAL TO THE PREPARATION OF THE DEFENSE

**A.     The Scope of Rule 16(a)(1)(E)(1)**

Discovery is governed by Rule 16 of the Federal Rules of Criminal Procedure.

> Rule 16 []grants defendants a broad right to discovery, providing that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . documents . . . within the government's possession, custody, or control . . . [that are] material to preparing the defense . . . ." Fed. R. Crim. P. 16(a)(1)(E)(I).

*United States v. Doe*, 705 F.3d 1134, 1150(9th Cir. Cal. 2013).

> A defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense. Rule 16 permits discovery that is relevant to the development of a possible defense.

*United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183-1184(9th Cir. 2013)(internal citations and quotations omitted).

**B.     Elements Of The Offenses**

Commander Misiewicz is charged with conspiracy to commit bribery and bribery in violation of 18 U.S.C.201(b)(2)(A) and (C) and 18 U.S.C. § 371.  Under 18 U.S.C. § 371 one is guilty of conspiracy to commit an offense against the United States where: "[T]wo or more persons conspire to commit any offense against the United States..., or any agency thereof in any manner or for any purpose..." In relevant part, the bribery statute states that one is guilty of bribery if that person:

> [B]eing a public official... directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for (A) being influenced in the performance of any official act; ... or (C) being induced

5

13CR3782-JLS
15CR0033-JLS

```
         to do or omit to do any act in violation of the official duty
         of such person.
```
18 U.S.C. 201(b)(2)(A)(C). According to the Ninth Circuit Manual Model of Criminal Jury Instructions, the elements of the offense of bribery are:

```
         First, the defendant was a public official;

         Second, the defendant [solicited] [received] [agreed to
         receive] something of value,... in return for being
         influenced in the performance of an official act [or] ...
         being persuaded to do or not to do an act in violation of
         defendant's official duty; and

         Third, the defendant acted corruptly, that is, intending to
         be influenced in the performance of an official act [or] to
         do or to omit to do an act in violation of the defendant's
         official duty.
```
*Model Instruction 8.13* (emphasis added); *see, also, United States v. Dorri*, 15 F.3d 888 (9th Cir. 1994) (same). For the person alleged to be on the receiving end of a bribe:

```
         Bribery requires intent... 'to be influenced' in an official
         act... In other words, for bribery there must be a quid pro
         quo - a specific intent to give or receive something of value
         in exchange for an official act.
```
*United States v. Sun Diamond Growers*, 526 U.S. 398, 404-405 (1999). *See, also, United States v. Garrido*, 713 F.3d 985, 996-997, (9th Cir. 2013)*(*A quid pro quo in bribery is the "specific intent to give or receive something of value in exchange for an official act."). "[T]he term corruptly under the bribery sections of § 201 refers to the defendant's intent to be influenced to perform an act in return for financial gain." *United States v. Leyva*, 282 F.3d 623, 626 (9th Cir. 2002)(citation omitted). "The requisite 'corrupt' intent has been defined as incorporating a concept of the bribe being the prime mover or producer of the official act." *United States v. Strand*, 574 F.2d 993, 995 (9th Cir. 1978)(internal citations and quotations omitted).

**C.      The Defense**

Commander Misiewicz did not act "corruptly." There was no *quid pro quo*. *Garrido*, 713 F.3d at 996-997. Any alleged benefits Commander Misiewicz received from Francis and GDMA, were not "the prime mover or producer of the official act." *Strand*, 574 F.2d at 995. Rather, consistent with his 28 years of dedicated, meritorious service, each and every official act by Commander Misiewicz was taken in his belief that it was in the best interest of the Navy.

The focus of the allegations appears to be that, in exchange for enumerated benefits: (1)Commander Misiewicz used his influence to sway decisions about ship port visits in ways favorable to Francis and GDMA; and (2) he provided confidential information to Francis and GDMA in the form of ship schedules. Below, the defense explains how his defense requires the discovery he seeks.

**1.      Influence On Port Visits Decisions**

The government alleges that Commander Misiewicz was bribed "to use his position and influence with the U.S. Navy to advocate for and advance the interests of Francis and GDMA, as opportunities arose." *Indictment*, ¶ 9. It is also alleged he was bribed into "providing classified and other internal U.S. Navy information to FRANCIS [and] being influenced in the performance of his official acts." *Information*, ¶ 6. It is further alleged that the enumerated overt acts, "*among others*,"form the basis of the conspiracy. *Indictment*, ¶ 11 (emphasis added).

The allegations are vague. However, in paragraphs 11(e) and (u) of the Indictment the government has specifically alleged Commander Misiewicz exercised his influence on ship port visits. Further,

7

13CR3782-JLS
15CR0033-JLS

reference to other pleadings in the Related Cases and a Press Release by the United States Attorney's Office on September 17, 2013 provide context for the government's conspiracy allegations.  On September 17, 2013 the government summarized its allegations concerning Commander Misiewicz to include:

> As the deputy operations officer Misiewicz had high-level exposure to the operational planning for ships in the Seventh Fleet and for any U.S. Navy ship traveling through the Seventh Fleet's area of responsibility.  He also held influence in determining or modifying the schedule of port visits for U.S. Navy vessels.[4]

Elsewhere in the Press Release it states:

> Misiewicz also operated as an advocate within the Navy for GDMA's interests, urging decisions about port visits and contractor usage that were designed to benefit GDMA.

*Press Release* p. 2.  The Complaint, filed in 13CR3782 on September 13, 2013 (docket #1), catalogs alleged exercises of Commander Misiewicz's influence, for the benefit of Francis and GDMA, to swing port visits to Port Klang, Malaysia, Laem Chabang, Thailand, and Phuket Thailand. Complaint ¶¶ 19, 20-21, 23, 24, 28-29, 32, 34[5]

Commander Misiewicz's defense to these allegations is precisely that he *did* "[have] high-level exposure to the operational planning for ships in the Seventh Fleet and for any U.S. Navy ship

---

[4] A copy of the September 17, 2013 press release (hereinafter, "Press Release") is attached as Exhibit "A."

[5] The defense recognizes that the Press Release and the Complaint in 13CR3782 are not operative charging documents.  They are referenced in the belief that they allege facts and posit theories that the government likely will advance at trial.  If  the government's theory of the conspiracy is now different, and does not include Commander Misiewiz's alleged corrupt attempts to influence port visits, the defense requests clarification on how, other than the enumerated acts, Commander Misiewicz allegedly "[used] his position and influence with the U.S. Navy to advocate for and advance the interests of Francis and GDMA, as opportunities arose."

traveling through the Seventh Fleet's area of responsibility." Whatever influence he exerted in the decision making process on the issue of port visits was consistent with - and a result of - "operational planning," not any desire or attemptto assist Francis or GDMA.

In his defense, Commander Misiewicz must be allowed to explain and present evidence concerning "operational planning." The process involves consideration of, among other things, the historical patterns of port visits, partnership building strategies with other countries, theater security, port threat assessment, port protection plans, response to dynamic events in the region, and quality liberty opportunities for the sailors. The fact that transiting carriers have limited time to spend in the Pacific *en route* to the Middle East also has to be balanced against the opportunity cost of losing time for operations at sea when taking the shortest transit paths. Finally, although there was much internal debate within the Naval Command about Francis and GDMA, the quality of GDMA's longtime service to the Seventh Fleet weighed in the balance.

It does not matter if the government seeks to introduce evidence of Commander Misiewicz's influence on one port visit decision or many, the same discovery is necessary. The decision making process was the same, and the decision concerning any one port visit was not made in a vacuum: each decision was made in the context of overarching strategic goals and in reference to decisions regarding other port visits over a period of time.

Defendant's Discovery Requests 1-8, 14, 16 and 19 specifically seek material relevant to this "operational planning" process, in

general, and to the specific considerations outlined above. Material responsive to these requests will show that Commander Misiewicz's recommendations regarding port visits were the product of careful consideration of appropriate factors, consistent with historical practices, and supported by many others who participated in the decision making process.

Moreover, even if Commander Misiewicz did not see the documents or materials requested, they are discoverable. To the extent they identify issues, persons and opinions that were involved in the decision making process, it is relevant to the preparation of the defense. Where information consistent with Commander Misiewicz's position is produced, it will identify potential witnesses and provide circumstantial evidence supporting his official actions. If it is adverse to his position, that will also assist in the formulation of his defense.

**2. Ship Schedules/Port Visit Plans**

The government has alleged that Commander Misiewicz corruptly provided Francis and GDMA with ship schedules the government has sometimes termed "classified," and at other times called "confidential." Commander Misiewicz did not provide Francis and GDMA with classified or confidential documents; rather, he provided lists of anticipated port visits (sanitized to exclude, from classified/ confidential documents, information concerning strategic objectives and operational exercises at sea). Commander Misiewicz disclosed anticipated port visit plans in a climate where, it was widely recognized, there were exorbitant costs associated with delayed notice of port visits to husbanding service providers. It was also a climate

where there was considerable discussion about the benefits of advance disclosure of port visits for strategic reasons. When he disclosed anticipated port visit plans to Francis and GDMA, Commander Misiewicz provided advance notice, not to an unknown entity, but to a contractor who had been entrusted with providing ship and crew security for Navy port visits in the region, ensuring the safety and quality of life for countless sailors and Marines, for more than 25 years.

Defendant's Discovery Requests 14, 15, 19 seek information relevant to the defense on this issue.

## IV.

### THE REQUESTED DISCOVERY IS IN THE CUSTODY AND CONTROL OF THE GOVERNMENT

The government has previously taken the position that it is "neither obligated, nor able" to access documents and items in the possession of the U.S. Navy in order to respond to Commander Misiewicz's discovery requests.[6]  This position is unsupportable.

In *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989) the Court determined that the prosecution had to turn over documents not only in its possession, but also in the possession of "closely connected government agencies." *Id.*, at 1036.  Its holding rested, in part on notions of fairness.

> [W]e do not believe that adopting a mechanical definition of "government" that would deny to the defendant documents accessible to the prosecution would reflect a fair balance of the competing concerns of the government and the defendant in this case...The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.

---

[6] *See*, 13CR3782, United States' Response In Opposition To Defendant's Discovery Requests, docket # 92 at p. 16.

*Id*. Similarly, in *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973 the Fifth Circuit held that the government was required to turn over documents in the possession of the U.S. Postal Service in response to a defendant's request where an attempt was made to bribe a Postal worker. The Court reasoned:

> It was a Postal Office employee who had been sought to be bribed. The government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting a government employee in the Post Office and use him as its principal witness, but deny having access to the Post Office files.

*Id.* The prosecution could not claim "different 'arms' of the government, particularly when so closely connected as this one for the purposes of case, as severable entities." *Id.; See, also, United States v. Bailleaux,* 685 F.2d 1105, 1113 (9th Cir. 1982) (prosecution required to turn over documents in the possession of the FBI); *United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989) ("Courts have in the main been more concerned with fairness to the defendant, on the one hand, and the government's ease of access to the documents sought, on the other, than with the issue whether the documents are actually within the physical possession of the prosecutor.").

     Over a period of years the prosecution team has been able to obtain documents and tangible objects from the Navy in order to prosecute at least seven individuals and entities in this Court alone who were either Naval personnel or Navy contractors. Their investigation has involved NCIS, DCAA, and DCIS, all of whom have had access to Navy documents for the purposes of prosecution. It is now disingenuous to claim that they are unable to obtain documents from the from the U.S. Navy. Moreover, to the extent that the government argues that it is too burdensome to go through the Naval records,

Commander Misiewicz has identified individual files and networks where he believes the documents likely will be found. By separate letter to counsel, the defense will identify these file locations for the government.

## V.

## CONCLUSION

For the reasons stated above, Commander Misiewicz respectfully requests that the Court grant his motions, and accord such other relief as seems just.

Respectfully submitted,

Dated: March 13, 2105      /S/ Mark F. Adams
                           Mark F. Adams

Dated: March 13, 2015      /S/ Wendy S. Gerboth
                           Wendy S. Gerboth

                           Attorneys for Michael Vannak Khem Misiewicz