1                  THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF CALIFORNIA

2

3                 HONORABLE JANIS L. SAMMARTINO
             UNITED STATES DISTRICT JUDGE PRESIDING

4

5    -----------------------------------------------------------

6    UNITED STATES OF AMERICA,    )  NO. 15-CR-0033-JLS
                            )  NO. 13-CR-3782-JLS
7            PLAINTIFF,    )
                            )  MARCH 27, 2015
8    VS.                      )
                            )
9    MICHAEL VANNAK KHEM MISIEWICZ, )  STATUS HEARING
                            )
10             DEFENDANT.    )
    -----------------------------------------------------------

11

12    APPEARANCES:

13

    FOR THE PLAINTIFF:      MARK W. PLETCHER
14                         U.S. ATTORNEY'S OFFICE
                         SOUTHERN DIST. OF CALIFORNIA
15                         CRIMINAL DIVISION
                         880 FRONT STREET, SUITE 6293
16                         SAN DIEGO, CA  92101

17

18    FOR THE DEFENDANT:      MARK F. ADAMS
                         LAW OFFICES OF MARK F. ADAMS
19                         964 FIFTH AVENUE, SUITE 335
                         SAN DIEGO, CA  92101

20

21                         WENDY S. GERBOTH
                         LAW OFFICES OF WENDY S. GERBOTH
22                         964 FIFTH AVENUE
                         SUITE 214
23                         SAN DIEGO, CA  92101

24

25    COURT REPORTER:         GAYLE WAKEFIELD, RPR, CRR

1    MARCH 27, 2015

2                         AFTERNOON SESSION

3         THE CLERK:  NUMBER 20 AND 21 ON THE CALENDAR,

4    13-CR-3782 AND 15-CR-33, UNITED STATES VS. MICHAEL VANNAK KHEM

5    MISIEWICZ, FOR STATUS.

6         MR. PLETCHER:  GOOD MORNING, YOUR HONOR.  MARK PLETCHER

7    FOR THE UNITED STATES.

8         MR. ADAMS:  GOOD MORNING, YOUR HONOR.  MARK ADAMS AND

9    WENDY GERBOTH ON BEHALF OF COMMANDER MISIEWICZ.  HE IS PRESENT

10   BEFORE THE COURT ON BOND.

11        THE COURT:  THANK YOU, COUNSEL.

12        I HAVE REVIEWED WHAT'S BEEN PRESENTED BY WAY OF MOTIONS

13   AND OPPOSITION FOR TODAY, AND I'M STRUCK WITH THE BREADTH OF

14   EVERYTHING, AND I WAS HOPING, BECAUSE I DON'T BELIEVE THIS HAS

15   OCCURRED AT THIS JUNCTURE IN THIS CASE, THAT BOTH SIDES SHOULD

16   MEET AND CONFER IN GOOD FAITH WITH THE GOAL OF NARROWING SOME

17   OF THESE REQUESTS.

18        I MEAN, IN ALL HONESTY, I UNDERSTAND THE POSITION OF

19   THE DEFENSE, AND I THINK SOME OF THIS IS PROBABLY PERTINENT TO

20   THAT.  I UNDERSTAND THE GOVERNMENT'S POINT ALSO, BUT I WOULD

21   THINK IF BOTH SIDES COULD MEET AND CONFER, IT WOULD BE OF GREAT

22   ASSISTANCE IN COMING UP WITH WHAT IS TRULY AT ISSUE IN THIS

23   MATTER, BECAUSE MY SENSE IS THIS HAS NOT TAKEN PLACE YET.

24        MR. ADAMS:  YOUR HONOR'S SENSE IS CORRECT.

25        THE COURT:  OKAY.

1          MR. ADAMS:  FIRST, LET ME SAY THANK YOU FOR MOVING THIS

2     UP TO THIS MORNING.  I KNOW YOUR AFTERNOON CALENDAR IS PRETTY

3     BUSY.

4          COUNSEL AND I HAVE HAD AN OPPORTUNITY TO DISCUSS

5     GETTING TOGETHER, AND I'M NEW TO THE CASE, WHICH HAS BEEN

6     QUITE --

7          THE COURT;  WELCOME, MR. ADAMS.

8          MR. ADAMS:  THANK YOU, YOUR HONOR.  IT'S BEEN QUITE AN

9     EXPERIENCE GETTING COMFORTABLE WITH THE AMOUNT OF DISCOVERY,

10    AND THE BREADTH OF DISCOVERY, AND WHAT'S IMPORTANT, AND WHAT'S

11    WHEAT AND WHAT'S CHAFF, AND SO ON, AND I'VE MADE SOME PROGRESS

12    ALONG THOSE LINES, AND COUNSEL'S BEEN KIND ENOUGH TO INVITE ME

13    TO COME OVER, ONCE THAT PROCESS IS A LITTLE FURTHER ALONG, AND

14    MEET, AND SO WE HAVE A MEETING SCHEDULED NOT NEXT WEEK BUT THE

15    WEEK AFTER.

16         THE COURT:  IN A MORE GENERAL SENSE OR WITH THE

17    SPECIFICITY TO FOCUS ON THIS MOTION AND THE SPECIFIC REQUESTS?

18         MR. ADAMS:  THE MEETING SET NOW IS KIND OF IN A GENERAL

19    SENSE, BUT I THINK IT MAKES SOME SENSE FOR US ALL TO GET

20    TOGETHER AND KIND OF FLESH OUT WHAT ARE THE SPECIFICS THAT WE

21    NEED.

22         I KNOW THAT WE RECEIVED YESTERDAY A THUMB DRIVE WITH A

23    LOT OF DOCUMENTS.  I HAD A CHANCE TO LOOK AT SOME OF WHAT'S ON

24    THAT DRIVE, AND AGAIN IT LOOKS LIKE THOUSANDS OF DOCUMENTS, AND

25    IT MAY BE PARTIALLY IN RESPONSE TO THE REQUEST WE'VE MADE,

1      THAT'S KIND OF PART OF THE SENSE I GET OF IT, SO I THINK THAT

2      YOUR HONOR'S CORRECT.

3          I KNOW THAT MS. GERBOTH DOES WANT TO TALK WITH YOUR

4      HONOR ABOUT SOME OF THE PARAMETERS BECAUSE WE DO THINK THAT

5      SOME OF OUR REQUESTS -- MOST OF OUR REQUESTS ARE RELEVANT AND

6      IMPORTANT.

7          THE COURT:  I UNDERSTAND THAT, AND I WOULD EXPECT YOU

8      TO THINK THAT, OF COURSE, OR YOU WOULDN'T HAVE MADE THE MOTION

9      IN GOOD FAITH.

10         MR. ADAMS:  EXACTLY, YOUR HONOR.

11         THE COURT:  I APPRECIATE THAT, BUT I ALSO THINK THERE'S

12     SOME MERIT TO SOME OF THE GOVERNMENT'S POINTS, AND I THOUGHT

13     BOTH SIDES, BEING REASONABLE, WOULD BE ABLE TO SIT DOWN AND

14     MAYBE WORK TOGETHER A LITTLE BIT BEFORE I END UP MAKING THE

15     CALL, AND WOULD PROBABLY NEED TO SPECIALLY SET THIS AT A TIME

16     WHEN I COULD TAKE A HALF A DAY AND WE COULD GO THROUGH THIS

17     BECAUSE I THINK IT'S OF THAT MAGNITUDE, COUNSEL.

18         MR. ADAMS:  THAT MAKES SENSE, THE DISCOVERY REQUEST

19     BEING SET ON AN OFF DAY, AFTER WE'VE HAD A CHANCE TO MEET AND

20     CONFER.  THERE ARE SOME AREAS WHERE I REALLY THINK WE ARE AT

21     LOGGERHEADS, AND I THINK WE CAN ADDRESS THAT AND MAYBE GET YOUR

22     HONOR'S REACTION.

23         THE COURT:  AND I THINK WHEN YOU GIVE ME THAT LIST OF

24     WHAT YOU'RE ACTUALLY AT LOGGERHEADS WITH, AFTER YOU MEET AND

25     CONFER, THAT WOULD BE VERY HELPFUL TO ME TO MAKE OUR TIME

1     TOGETHER AS PRODUCTIVE AS POSSIBLE, SO I CAN HAVE MY QUESTIONS

2     AND CONCERNS SPELLED OUT FOR YOU.

3          MR. ADAMS:  I THINK YOUR HONOR HAS INDICATED TODAY, IF

4     I'M CORRECT, THAT YOU SEE THE RELEVANCE TO OUR DEFENSE IN SOME

5     OF THE REQUESTS THAT WE'RE MAKING.

6          THE COURT:  I UNDERSTAND, AND I UNDERSTAND THEIR POINT,

7     TOO, AND I'M JUST SAYING THAT I THINK BOTH SIDES MIGHT WANT TO

8     SIT AND DISCUSS THIS BEFORE IT COMES TO ME.

9          LET ME HEAR FROM MR. PLETCHER AND SEE WHAT HE WOULD

10    LIKE TO SAY.

11         MR. PLETCHER:  THANK YOU, YOUR HONOR.  YOUR HONOR AT

12    PREVIOUS HEARINGS HAS ASKED ME TO PROVIDE AN UPDATE ON THIS

13    ISSUE, AND I'M GOING TO DO THAT AGAIN RIGHT NOW --

14         THE COURT:  EXCELLENT.

15         MR. PLETCHER:  -- BECAUSE I THINK SOME OF WHAT WAS

16    WRITTEN IN THE PAPERS MAY HAVE CLOUDED THAT.

17         THE FIRST THING IS THAT THE MATERIALS THAT HAVE BEEN

18    COLLECTED IN THIS INVESTIGATION ARE SET OUT ON THIS

19    APPROXIMATELY 15-TABBED SPREADSHEET IN VARIOUS CATEGORIES.

20         SO THE FIRST ONE IS THINGS THAT WERE SEIZED

21    INTERNATIONALLY, THINGS THAT WERE SEIZED DOMESTICALLY, THINGS

22    THAT WERE VOLUNTARILY PRODUCED TO THE UNITED STATES,

23    INVESTIGATIVE REPORTING, WHICH SET OUT NOT JUST ALL OF THE

24    INFORMATION THAT WE HAVE SECURED IN THE INVESTIGATION, BUT WE

25    HAVE PUT IT DOWN BY CATEGORY, BY LINE NUMBER, AND BY BATES

```
 1      NUMBER.  THIS IS THE ENTIRE UNIVERSE OF THINGS IN THE ENTIRETY
 2      OF THE INVESTIGATION, AND YOUR HONOR HAS A GOOD IDEA OF SOME
 3      SCOPE BECAUSE I THINK SOMETHING LIKE 14 CRIMINAL CASES ARE
 4      BEFORE YOU AS RELATED.
 5           THOSE THINGS, OF COURSE, ARE NOT ALL PERTINENT TO
 6      COMMANDER MISIEWICZ.  THE THINGS THAT THE INVESTIGATIVE TEAM
 7      HAVE IDENTIFIED PERTINENT TO COMMANDER MISIEWICZ WE'VE
 8      DISTILLED ONTO THIS SPREADSHEET, WHICH WE THEN HAVE PROVIDED IN
 9      ITS ENTIRETY TO THE DEFENSE AS THINGS THAT ARE SUBJECT TO OUR
10      RULE 16 OBLIGATION, AS THINGS THAT MAY BE SUBJECT TO BRADY OR
11      GIGLIO, WITHOUT ATTEMPTING TO SORT OF OTHERWISE MAKE
12      REFINEMENTS BASED ON RELEVANCE OR ANY OTHER CRITERIA.
13           THOSE ARE THINGS THAT THE DEFENSE CAN GO THROUGH, WITH
14      THE CAVEAT THAT ANYTHING ON THIS SPREADSHEET THAT THEY
15      ADDITIONALLY WANT TO SEE CAN BE MADE AVAILABLE TO THEM UNDER
16      THE PROPER CIRCUMSTANCES.  IF IT'S UNCLASSIFIED MATERIAL, WHICH
17      THE MAJORITY OF IT IS, WE WILL SIMPLY JUST MAKE A COPY, IF THEY
18      REQUEST ONE.
19           SO, FOR EXAMPLE, IN THEIR REPLY BRIEF THEY PUT OUT AN
20      INVESTIGATIVE REPORT THAT'S ON THIS SPREADSHEET, AND IN THE
21      INVESTIGATIVE REPORT TABS, AT LINES 861, DESIGNATING FOUR
22      ATTACHMENTS, THEY'RE NOT PARTICULARLY RELEVANT TO COMMANDER
23      MISIEWICZ.  THE INVESTIGATIVE REPORT HAS BEEN PRODUCED TO THEM.
24      THE ATTACHMENTS, WHICH ARE FOUR IRRELEVANT CD'S, ARE AVAILABLE,
25      WHICH THEY CAN REQUEST AT ANY TIME.  SO THE IDEA THAT THE
```

1    GOVERNMENT HAS PRODUCED THAT WHICH IS ONLY RESPONSIVE TO ITS

2    PROSECUTION THEORY AND NOT THAT WHICH IS RELEVANT TO THE

3    DEFENSE IS ENTIRELY ERRONEOUS, AND I GUESS CALCULATED TO

4    MISLEAD THE COURT ABOUT THE GOVERNMENT'S ATTEMPTS TO FACILITATE

5    DISCOVERY IN THIS CASE.

6         I DON'T THINK IT BEARS MUCH REMINDER, BUT, OF COURSE,

7    THE GOVERNMENT HAS TRIED, THROUGH THE PROVISION OF DOCUMENT

8    MANAGEMENT SOFTWARE, THE ROUTINE OFFERS OF ASSISTANCE WITH I.T.

9    SUPPORT, TO MAKE SURE THAT THE DOCUMENTS THAT WE ARE

10   AFFIRMATIVELY PRODUCING ARE ACCESSIBLE, THAT THEY'RE SEARCHABLE

11   AND, CODABLE TO THE DEFENSE, WITH AN UNDERSTANDING THAT THIS IS

12   SOMETHING MORE THAN THE FILE THAT COMES IN PERHAPS THE ROUTINE

13   CASE IN THIS DISTRICT.

14        A COUPLE OF THOUSAND PAGES THAT WERE RECENTLY PRODUCED

15   ARE JUST THE UPDATE, AS WE PROMISED THE COURT WE WOULD DO FROM

16   TIME TO TIME.  THE INVESTIGATION DIDN'T STOP WHEN COMMANDER

17   MISIEWICZ WAS ARRESTED.  IT DIDN'T STOP WHEN HE WAS INDICTED

18   THE FIRST TIME, AND IT DIDN'T STOP AT THE END WHEN THE

19   INVESTIGATION WAS SUPERCEDED.

20        WE HAVE PROMISED THE DEFENSE AND THE COURT THAT WE

21   WOULD CONTINUE TO PRODUCE ALL THE INVESTIGATIVE REPORTING

22   THAT'S BEING DONE, INTERVIEWS ACROSS THE INVESTIGATION, WHETHER

23   RELEVANT OR NOT, SO THAT THE DEFENSE CAN MAKE THOSE

24   DETERMINATIONS, AND WE'RE CONTINUING TO DO THOSE THINGS.

25        WE'RE ALSO CONTINUING TO UPDATE THE SPREADSHEET AS THE

1    INVESTIGATION CONTINUES.  AS IT STANDS, THE INVESTIGATION

2    CONTINUES TO INVESTIGATE MORE THAN 200 SUBJECTS.  WE UNDERSTAND

3    WE HAVE THIS AND ONE OTHER CRIMINAL CASE THAT ARE PENDING AND

4    MOVING TO TRIAL, AND WE'RE TRYING TO MOVE THOSE THINGS FORWARD

5    IN AN ORDERLY AND EFFICIENT BASIS AND IN A WAY THAT WE ARE ABLE

6    TO USE WHATEVER EXPERTISE WE HAVE ABOUT THE ENTIRETY OF THE

7    CASE TO FACILITATE THE DEFENSE'S PREPARATION.

8        WHAT WE -- ONE OF THE I THINK CRITICAL DISTINCTIONS

9    HERE IS WE HAVE OFFERED, OUT OF A MATTER OF PROFESSIONAL

10   COURTESY, TO GO SEEK FROM OTHER SOURCES, IF WE'RE ABLE,

11   SPECIFIC DOCUMENTS THAT THE DEFENSE REQUESTS, THINGS THAT ARE

12   NOT PART OF OUR OWN OBLIGATION, THINGS THAT ARE WITHIN THE

13   CUSTODY OF PEOPLE IN ANOTHER GOVERNMENT AGENCY OR ANYWHERE

14   ELSE, IF WE CAN FACILITATE SOMETHING FOR THE DEFENSE.

15       THE DEFENSE HAS STAKED OUT NOW I THINK PERHAPS THEIR

16   ONLY DEFENSE, WHICH IS THAT COMMANDER MISIEWICZ DID NOT ACT

17   CORRUPTLY.  CERTAINLY THINGS OF VALUE RECEIVED AND OFFICIAL

18   ACTS TAKEN ON BEHALF OF GDMA ARE PART OF THE EVIDENCE THAT HE

19   DIDN'T DO SO CORRUPTLY IS WHERE THEY HAVE STAKED THEIR DEFENSE.

20   WE UNDERSTAND THEIR DEFENSE.  WE ARE NOT BOTHERED BY THEIR

21   DEFENSE, AS SUGGESTED.  WHAT WE ARE BOTHERED BY IS WHAT

22   AMOUNTS, FRANKLY, TO -- WELL, BLATANT DISREGARD OF ANYTHING

23   THAT THE LAW WOULD UNDERSTAND IS A DISCOVERY OBLIGATION.

24       THE COURT:  LET ME ASK YOU THIS, MR. PLETCHER, DO YOU

25   THINK MEETING AND CONFERRING IS WITHOUT ANY BENEFIT AT THIS

1    POINT?

2         MR. PLETCHER:  MEETING AND CONFERRING WILL BE HELPFUL

3    TO THE EXTENT THAT THE DEFENSE IS WILLING TO OFFER SPECIFIC

4    DOCUMENTS THAT THE UNITED STATES COULD GO GET AS A MATTER OF

5    PROFESSIONAL COURTESY.  THE UNITED STATES IS NOT GOING TO TAKE

6    ON ANY AND ALL DOCUMENTS IN THE 7TH FLEET AREA OF

7    RESPONSIBILITY, IN THE PRESENCE OF THE NAVY, DEALING WITH ANY

8    7TH FLEET SHIP OVER THE COURSE OF SIX YEARS.  WE JUST ARE

9    SIMPLY NOT GOING TO ASSUME THE UNITED STATES NAVY IS PART OF

10   THE PROSECUTION TEAM.  THE UNITED STATES NAVY IS AN ARM AND AN

11   INSTRUMENT OF THE DEPARTMENT OF DEFENSE WHO IS CHARGED WITH

12   KEEPING THIS NATION SAFE.  THEY ARE NOT CHARGED WITH CONVICTING

13   COMMANDER MISIEWICZ IN THIS CASE.  WE HAVE, AS A PROSECUTION

14   TEAM, GIVEN THEM THE DISCOVERY.

15        THE COURT:  YOU UNDERSTAND THE NATURE OF THEIR DEFENSE

16   AND WHY THEY WANT SOME OF THAT.

17        MR. PLETCHER:  I ONLY SORT OF UNDERSTAND THE NATURE OF

18   THEIR DEFENSE, GIVEN THE SORT OF THINGS THAT ARE CHARGED, AND I

19   KNOW THAT THE COURT HAS READ THE PAPERS.  SO I CAN UNDERSTAND

20   -- IT DOESN'T, FRANKLY, MATTER IF I UNDERSTAND IT.

21        I'M HAPPY TO GO SEEK SPECIFIC CATEGORIES OF DOCUMENTS

22   FROM SPECIFIC PLACES, BUT, UNDERSTAND, THE LISTS THAT THEY

23   PROVIDED THAT PURPORTS TO NARROW THE FIELD OF THEIR DISCOVERY

24   REQUEST INCLUDES DOCUMENTS FROM 101 SPECIFIC INDIVIDUALS, AND

25   14 ENTIRE CLASSIFIED AND NON-CLASSIFIED COMPUTER SYSTEMS OF THE

1    ENTIRE 7TH FLEET, PACFLT, COMLOG WESTPAC.  THE IDEA THAT WE ARE

2    EVEN DISCUSSING THIS, AS A MATTER OF CRIMINAL DISCOVERY,

3    BOGGLES MY MIND.

4         THE COURT:  THERE'S POINTS OF MERIT ON BOTH SIDES, AND

5    YOUR POINTS ARE WELL TAKEN, WHICH IS WHY I NEED YOU TO MEET AND

6    CONFER BEFORE WE CAN TAKE THIS UP AND SEE IF THIS CAN AT ALL BE

7    NARROWED.  WHAT CAN'T BE NARROWED, I WILL DEAL WITH, BUT IT'S

8    GOING TO TAKE A LITTLE MORE TIME THAN WHAT I HAVE HAD OR HAVE

9    TODAY.

10        MR. PLETCHER:  WHAT I WOULD SUGGEST, YOUR HONOR --

11        THE COURT:  I DON'T KNOW HOW MUCH TIME THAT'S GOING TO

12   TAKE, MR. PLETCHER.

13        MR. PLETCHER:  WE'RE HAPPY TO SPEND AS MUCH TIME AS

14   POSSIBLE TO SORT OF RELIEVE THESE ISSUES.  WHAT I WOULD SUGGEST

15   IS THAT AS WE LOOK FORWARD TO THINGS -- AGAIN, IF THE UNITED

16   STATES IS GOING TO TAKE UPON ITS OWN BURDEN TO DO THAT ARE

17   OUTSIDE THE COURSE OF ITS LEGAL OR STATUTORY RULE-BASED

18   OBLIGATIONS, THAT WE LOOK TO THE CATEGORIES OF DOCUMENTS THAT

19   WOULD BE OBTAINABLE BY THE DEFENSE UNDER *UNITED STATES VS.*

20   *NIXON*, THINGS THAT THE DEFENSE COULD GO GET ON THEIR OWN THAT

21   WE COULD FACILITATE FOR THEM.  THAT IS TO SAY, THAT THEY MUST

22   IDENTIFY DOCUMENTS THAT ARE RELEVANT AND ADMISSIBLE, AND THEY

23   MUST IDENTIFY THOSE DOCUMENTS WITH SPECIFICITY.

24        SO I'M TALKING ABOUT SPECIFIC DOCUMENTS THAT ARE WITHIN

25   COMMANDER MISIEWICZ'S KNOWLEDGE.  NOW, UNDERSTAND, WE'VE

1    PRODUCED TO THEM ALREADY HIS ENTIRE NON-CLASSIFIED EMAIL

2    ACCOUNT, SO THE THINGS THAT WERE WITHIN HIS KNOWLEDGE SHOULD

3    LARGELY BE THERE.  WE'VE PRODUCED TO HIM THE ENTIRETY OF

4    LEONARD FRANCIS'S EMAIL ACCOUNT AND SERVERS THAT WE HAVE SEIZED

5    FROM GDMA.

6         SO IF THERE ARE ADDITIONAL DOCUMENTS THAT THEY'RE

7    TALKING ABOUT, THEN I WOULD LIKE THEM TO IDENTIFY THEM ALONG

8    THE LINES THAT THE LAW REQUIRES, THAT THE ACTUAL LAW REQUIRES

9    IN *UNITED STATES VS. NIXON*, AS INTERPRETED BY ANY NINTH CIRCUIT

10   PRECEDENT THAT THEY THINK IS RELEVANT, AND THEN WE WILL GO AND

11   -- THEN WE HAVE A UNIVERSE OF DOCUMENTS THAT WE CAN REALLY TALK

12   ABOUT, BECAUSE THE UNIVERSE OF DOCUMENTS THAT IS SET OUT HERE

13   IS WITHOUT ANY SPECIFICITY AT ALL.  IT'S, "GO FORTH AND SECURE

14   EVERY DOCUMENT FROM THE 7TH FLEET," AND, AS WE WROTE IN OUR

15   PAPERS, THAT'S UNBOUNDED IN SCOPE AND SORT OF UNREASONABLE IN

16   BREADTH.

17        WE'RE WILLING TO, AGAIN AS A MATTER OF PROFESSIONAL

18   COURTESY, AS AN UNDERSTANDING OF SORT OF THE BREADTH OF THIS

19   CASE, WITHOUT PERFECTLY UNDERSTANDING THE DEFENSE, TRY TO

20   ASSIST THEM, BUT WE'RE NOT WILLING TO DO IT IN THIS KIND OF

21   POSTURE.

22        THE COURT:  HOW MUCH TIME DO YOU THINK YOU -- AND I'LL

23   ASK MR. ADAMS AND MS. GERBOTH THIS QUESTION ALSO.  HOW MUCH

24   TIME DO YOU THINK YOU NEED FOR THE DEFENSE TO BE AS SPECIFIC AS

25   THEY CAN BE, BECAUSE THE GOVERNMENT'S GOT A POINT ON THIS, THE

1      WAY IT'S CURRENTLY FRAMED, TO BE MORE SPECIFIC, TO LET HIM

2      KNOW, TO SEE WHAT HE CAN AND CAN'T DO WITH REGARD TO THAT OR IS

3      WILLING TO DO UNDER THEIR OBLIGATIONS, THEN TO REFRAME IT AND

4      BRING IT BACK TO ME?  HOW MUCH TIME, AND YOU CAN CONFER OFF THE

5      RECORD IF YOU WOULD LIKE TO, BUT THAT'S IMPORTANT.

6           MR. PLETCHER:  I WOULD LIKE TO POINT OUT, YOUR HONOR,

7      THAT THE UNITED STATES IS NOT OFFERING AN ITERATIVE CONSUMPTION

8      OF THE APPLE.  THE UNITED STATES ISN'T OFFERING THE ABILITY TO

9      GO DO VARIOUS THINGS FOR THEM, AS A MATTER OF PROFESSIONAL

10     COURTESY, FOR THEM JUST TO RESERVE EVERYTHING THAT'S LEFT IN

11     THIS MOTION FOR DECISION BY THE COURT.  IF WE ARE GOING TO COME

12     TO AN AGREEMENT AS TO THE THINGS THAT WOULD BE OF CIRCUMSCRIBED

13     UNIVERSE, THEN FINE, BUT IF THE IDEA IS "WE'RE GOING TO TAKE

14     AND TAKE AND TAKE UNTIL THE GOVERNMENT GIVES NO MORE," AND "WE

15     CONTINUE TO DEMAND," WE'RE NOT INTERESTED IN THAT AS A

16     SOLUTION.  IT'S NOT A SOLUTION.

17          THE COURT:  OKAY.  I'M NOT REALLY SURE WHAT EXACTLY

18     YOU'RE SAYING THERE.  SO I WOULD LIKE YOU TO MEET AND CONFER

19     AND SEE WHAT, IF ANYTHING, YOU CAN AGREE TO.  WHAT YOU'RE

20     SAYING IS IT'S EITHER AN ALL AGREEMENT OR NOTHING?

21          MR. PLETCHER:  NOT EXACTLY, BUT THIS IS NOT SOMETHING

22     THAT WE HAVE AN OBLIGATION TO DO.  SO THE FACT OF OUR GOOD

23     FAITH AND OUR GOODWILL BEING TAKEN ADVANTAGE OF IS, FRANKLY,

24     SOMETHING THAT I'M NOT READY TO COUNTENANCE.

25          I AM OFFERING THE DEFENSE THE COMMISSION OF THE

1    GOVERNMENT'S RESOURCES THAT COULD BE BETTER SPENT PREPARING FOR

2    TRIAL, IDENTIFYING EXHIBITS, PULLING TOGETHER WITNESSES.  I'M

3    OFFERING THOSE RESOURCES TO GO WORK ON THEIR BEHALF, AND I'M

4    NOT WILLING TO LET THAT OFFER IN GOOD FAITH BE SQUANDERED.

5         THE COURT:  OKAY.

6         MR. ADAMS:  YOUR HONOR, I THINK -- HAVING HEARD MR.

7    PLETCHER, I APPRECIATE WHAT HE IS TRYING TO SAY, AND I THINK

8    THAT MEETING AND CONFERRING WOULD BE OF SOME BENEFIT.  WE'RE

9    GOING TO NEED SOME MORE TIME.

10        THE COURT:  IT HAS TO BE.  WHILE I SAY I UNDERSTAND WHY

11   YOU'RE MAKING YOUR REQUEST, IT IS EXTRAORDINARILY BROAD, WHICH

12   MAKES IT EXTRAORDINARILY DIFFICULT FOR THE COURT TO BE PRECISE

13   WITH REGARD TO ANY OF THIS.  SO WE NEED TO GO THROUGH ANOTHER

14   ITERATION, TO BE HELPFUL TO THE COURT AT LEAST, IF I'M GOING TO

15   END UP WITH THIS IN MY LAP.

16        I THINK MR. PLETCHER IS MAKING A VERY SPECIFIC POINT

17   THAT WITH -- WE NEED MORE SPECIFICITY HERE SO THAT YOU AS A

18   DEFENSE TEAM CAN MEET WITH THE GOVERNMENT'S TEAM AND SEE WHAT,

19   IF ANYTHING, YOU CAN RESOLVE, AND I THINK HE'S BEEN VERY CLEAR

20   ON THAT.  I HOPE THAT COULD BE PRODUCTIVE FOR BOTH SIDES.

21        MR. ADAMS:  AND I JUST STAND UP TO SAY I THINK IT CAN

22   BE PRODUCTIVE.

23        THE COURT:  HOW MUCH TIME DO YOU THINK THAT WOULD TAKE,

24   MR. ADAMS AND MS. GERBOTH, TO SIT DOWN AND MEANINGFULLY DO?  IT

25   IS A HUGE REQUEST YOU'RE MAKING AT THIS JUNCTURE, AND IT NEEDS

1        TO BE --

2                MR. ADAMS:  WELL, RIGHT NOW -- LET ME BACK UP A LITTLE

3        BIT AND JUST TELL YOUR HONOR, THIS HAS BEEN QUITE A JOURNEY FOR

4        THE LAST FEW WEEKS FOR ME JUST GETTING A HANDLE ON THINGS.

5                THE COURT:  I'M SURE.

6                MR. ADAMS:  I WAS PLANNING TO COME IN HERE AND ASK YOUR

7        HONOR FOR 60 MORE DAYS FOR A FURTHER STATUS HEARING.  THAT WILL

8        HELP US TO FURTHER FOCUS ON THE WITNESSES THAT WE ARE BEGINNING

9        TO IDENTIFY, THE DOCUMENTS THAT THOSE WITNESSES HAVE, YOU KNOW,

10       HOW ARE WE GOING TO INTERVIEW SOME OF THOSE WITNESSES, WHO ARE

11       KIND OF SCATTERED AROUND THE WORLD IN MANY CASES, AND THEN TO

12       IDENTIFY THE GOVERNMENT'S WITNESSES AND THE DOCUMENTS TO HELP

13       US TO UNDERSTAND WHAT THOSE WITNESSES HAVE TO SAY, WHAT THEY'VE

14       SAID IN THE PAST, AND WHAT THE LIKELY CROSS-EXAMINATION OF

15       THOSE WITNESSES WOULD LIKE LOOK.

16               ONE THING I THINK IN TERMS OF THE DISCOVERY THAT WE

17       NEED, AND I KNOW MS. GERBOTH WANTS TO ADDRESS THIS WITH YOUR

18       HONOR, IS KIND OF NARROWING THE SCOPE A LITTLE BIT, BUT ALSO

19       UNDERSTANDING THE SCOPE OF WHAT WE'RE ENTITLED TO, AND SHE

20       WANTS TO TALK A LITTLE BIT ABOUT THE OVERT ACTS THAT ARE

21       IDENTIFIED IN THE CONSPIRACY THAT WE'RE FACING NOW, AND WHAT

22       UNIVERSE OF DISCOVERY WE WOULD BE ENTITLED TO, AND IF WE COULD

23       MAYBE --

24               THE COURT:  DON'T YOU THINK YOU SHOULD TAKE THAT UP

25       WITH THE GOVERNMENT?  I MEAN --

1            MR. ADAMS:  WELL, I THINK IT WOULD HELP TO HAVE KIND OF

2        THE COURT'S THINKING.

3            THE COURT:  I'M NOT GOING TO GIVE YOU PRELIMINARY

4        THOUGHTS UNTIL YOU FOLKS MEET --

5            MR. PLETCHER:  WITH RESPECT TO IF THE DEFENSE IS ABLE

6        TO PROVIDE WITH SPECIFICITY THE INFORMATION THAT I'VE

7        REQUESTED, I DO NOT CARE WHAT THEY ASK FOR, AS LONG AS IT'S NOT

8        CLASSIFIED.

9            THE COURT:  HE'S MAKING A REMARKABLE OFFER HERE, FOLKS.

10           MR. ADAMS:  I HEAR HIM.

11           THE COURT:  BUT WHAT YOU'VE ASKED FOR IS SO EXPANSIVE

12       AS TO BE INDEFINABLE.

13           MR. PLETCHER:  FOR EXAMPLE, YOUR HONOR, IT WOULD TAKE

14       -- I COULD BE CONVINCED.  I COULD SEE A JUSTIFICATION.  BUT,

15       FOR EXAMPLE, DOCUMENTS THAT WERE OUTSIDE OF MR. MISIEWICZ'S

16       KNOWLEDGE SEEMED TO HAVE VERY LITTLE BEARING ON HIS INTENT.

17       EVEN IF HIS DEFENSE IS, "I MADE A DECISION FOR SOME REASON

18       OTHER THAN THE TRIPS AND THE MONEY AND THE THINGS OF VALUE," IT

19       WOULD HAVE TO BE SOME REASON THAT HE KNEW OF.

20           FOR EXAMPLE, "ANY DOCUMENT OUTSIDE THE SCOPE OF THE

21       CONSPIRACY COUNT IN THE INDICTMENT" STRIKES ME AS VERY FAR

22       AFIELD FROM WHAT WE'RE DEALING WITH.  SO JUST THOSE TWO THINGS

23       CARVE, WHAT I THINK IS REASONABLY CONSTRUED, HALF A BILLION

24       DOCUMENTS THEY'VE ASKED FOR, THAT WOULD CUT THAT UNIVERSE BY

25       80 PERCENT, SO NOW WE'RE ONLY DEALING WITH 100 MILLION

1    DOCUMENTS.  FROM THAT, MY HOPE IS THEY COULD BE ADDITIONALLY

2    SPECIFIC AS TO PERSON, TIME FRAME, EVENT, SOME WAY TO GIVE THE

3    UNITED STATES THE ABILITY TO EVEN FIND WHAT THEY'RE LOOKING

4    FOR.

5             THE COURT:  GO AHEAD, MS. GERBOTH.

6             MS. GERBOTH:  YOUR HONOR, THE ONE THING, AND IT FOLLOWS

7    ONTO WHAT MR. PLETCHER IS TALKING ABOUT, WE'RE PERFECTLY

8    WILLING AND I BELIEVE THERE IS BENEFIT TO GOING BACK AND

9    MEETING AND CONFERRING.  I'M IN AGREEMENT WITH THAT.

10            I DO THINK THAT WE NEED TO HAVE SOME PARAMETERS

11   SKETCHED OUT.  FOR EXAMPLE, THE POSITION THAT THE UNITED STATES

12   HAS TAKEN THAT OUR DISCOVERY IS LIMITED TO OVERT ACTS ALLEGED

13   IN THE INDICTMENT, IF THAT'S THE POSITION, THAT DOESN'T ALLOW

14   US DISCOVERY OF OUR DOCUMENTS FOR OUR DEFENSE OR OF THE

15   OVERARCHING CONSPIRACY ALLEGATIONS.  THERE NEEDS TO BE A

16   RECOGNITION THAT WE'RE ENTITLED TO DISCOVERY THAT'S OUTSIDE

17   SPECIFICALLY WHAT THEY HAVE ALLEGED FOR THEIR PROSECUTION CASE

18   AS OVERT ACTS.

19            MR. PLETCHER:  LET'S BE CLEAR WITH MY POSITION.  I

20   DON'T THINK THEY'RE ENTITLED TO ANYTHING.  THEY'RE ENTITLED TO

21   WHAT'S IN THE GOVERNMENT'S SPREADSHEET, BECAUSE THAT'S THE

22   UNIVERSE OF EVIDENCE CREATED BY THE PROSECUTION TEAM.

23            WHAT I HAVE DONE IS MADE AN OFFER TO ASSIST THEM TO GET

24   THINGS THAT ARE OTHERWISE ADDITIONALLY RELEVANT THAT THEY COULD

25   GO GET THEMSELVES UNDER *UNITED STATES VS. NIXON* MAYBE.  THE

1    COURT WOULD HAVE TO GRANT THEIR ABILITY TO DO THAT.  THE UNITED

2    STATES NAVY COULD BRING A MOTION TO QUASH THOSE SUBPOENAS, BUT

3    I WILL TRY TO ASSIST THEM.

4         WE ARE NOT GOING TO, AS THE SUPREME COURT SAID, LET

5    THIS WHOLE THING DEVOLVE INTO A GENERALIZED FISHING EXPEDITION.

6    RELEVANT, ADMISSIBILITY AND SPECIFICITY, THOSE ARE THE

7    TOUCHSTONES OF DEFENSE REQUESTS THAT ARE OUTSIDE OF THE SCOPE

8    OF DISCOVERY.

9         THE COURT:  WHAT MS. GERBOTH SAID THOUGH WAS SHE'S

10   CONCERNED YOU'RE NOT GOING TO DO ANYTHING BEYOND THE OVERT

11   ACTS.  YOU'RE WILLING TO.

12        MR. PLETCHER:  I'M WILLING TO, BUT SHE'S NOT ENTITLED

13   TO IT AS A MATTER OF LAW.

14        THE COURT:  CORRECT.

15        MR. PLETCHER:  BUT I'M WILLING TO DO IT AS A MATTER --

16   TO ASSIST THE DEFENSE AS A PROFESSIONAL COURTESY.

17        THE COURT:  THAT'S PRETTY MUCH WHERE I WOULD LIKE TO

18   LEAVE IT BECAUSE I THINK HE'S WILLING TO ASSIST.  I UNDERSTAND

19   WHY YOU'RE MAKING THAT REQUEST.  I ALSO UNDERSTAND THAT

20   SOMETHING MAY COME RIGHT BACK HERE, AFTER YOU WORK IN GOOD

21   FAITH, AND I'LL HAVE TO MAKE THOSE CALLS, BUT AGAIN I NEED

22   SPECIFICITY TO KNOW WHAT I'M TALKING ABOUT, AND RIGHT NOW THE

23   REQUESTS -- SOME OF THEM ARE BROAD WITHOUT ENOUGH DETAIL AND

24   SPECIFICITY TO HELP ME WITH IT.

25        I WOULD LIKE TO SET A TIME TO BRING YOU ALL BACK, AFTER

1    THIS HAS TAKEN PLACE, AND I DON'T KNOW HOW MUCH TIME YOU NEED

2    TO DO THAT OR IF YOU'RE READY TO DO IT, AND WHAT IT'S GOING TO

3    ENTAIL, BUT I REALLY NEED SOME HARD, TIME-CONSUMING SESSIONS

4    WHERE, AFTER YOU'VE HAD THE OPPORTUNITY AS A DEFENSE TEAM TO

5    SAY, "THIS IS AS SPECIFIC AS WE CAN BE," BECAUSE IF YOU CAN'T

6    BE ANY MORE SPECIFIC OTHER THAN "THE ENTIRE UNIVERSE OF THINGS

7    OUT THERE," THERE'S GOING TO BE AN ISSUE, FOLKS, AND YOU

8    UNDERSTAND THAT.

9         MR. PLETCHER IS MAKING -- HE IS SAYING WITHOUT

10   ANYTHING, FURTHER HE WILL ASSIST YOU, IF THERE'S SPECIFICITY.

11   SO TO ME THAT INTERMEDIARY STEP OF A GOOD FAITH MEET AND CONFER

12   IS APPROPRIATELY TAKEN AT THIS POINT.

13        SO MY QUESTION GOES TO HOW MUCH TIME TO DO THAT BECAUSE

14   THIS IS NOT A QUICK HALF HOUR MEETING, FOLKS.

15        MS. GERBOTH:  NO.  MR. ADAMS AND I WOULD SUGGEST

16   60 DAYS.

17        MR. PLETCHER:  THAT'S FINE.  I MEAN, WE WOULD LIKE TO

18   RECEIVE WHATEVER -- I DON'T KNOW THAT WE NEED TO SIT DOWN.  WE

19   CAN SIT DOWN ANYTIME THEY WANT, BUT WE'D LIKE TO RECEIVE

20   REQUESTS THAT HAVE THE REQUISITE AMOUNT OF SPECIFICITY, AND IF

21   WE RECEIVE THOSE REQUESTS, I WILL DEPLOY PEOPLE -- I KNOW THE

22   COURT UNDERSTANDS, BUT I WILL DEPLOY PEOPLE ACROSS THE GLOBE,

23   WHICH IS WHAT IT'S GOING TO TAKE TO GET THE DOCUMENTS THE

24   DEFENSE ASKS.

25        THESE DOCUMENTS ARE IN SINGAPORE, JAPAN, HAWAII.  THEY

1    MIGHT BE ON SHIPS.  THEY MIGHT BE ON SUBMARINES.  I DON'T KNOW

2    EXACTLY WHERE THE THINGS ARE GOING TO BE.  IF WE ARE GIVEN THE

3    AMOUNT OF REQUISITE SPECIFICITY TO GO GET SPECIFIC DOCUMENTS --

4    I'M NOT TALKING ABOUT SOMEBODY'S ENTIRE EMAIL ACCOUNT OVER THE

5    COURSE OF THE LAST DECADE.  I'M TALKING ABOUT DOCUMENTS WITH

6    THE REQUIRED SPECIFICITY.  WE WILL ENDEAVOR TO GET THEM, IF

7    THEY'RE STILL IN EXISTENCE.

8         THE COURT:  I'M GOING TO SUGGEST MAYBE A PRELIMINARY

9    MEETING TO SET UP HOW YOU'RE GOING TO APPROACH THIS.  I AM

10   WILLING, WITH THE AGREEMENT OF BOTH SIDES, TO CONTINUE THIS

11   MATTER 60 DAYS, TO A FRIDAY CALENDAR, TO HEAR AN UPDATE ON

12   WHERE YOU ARE.

13        SO LET'S GO OUT 60 DAYS.  I KNOW BOTH SIDES YOU WILL

14   MEET AND CONFER IN GOOD FAITH AND DO EVERYTHING YOU CAN.  I

15   UNDERSTAND THE REASONS ON BOTH SIDES, AND LET'S SEE IF WE CAN

16   AT LEAST NARROW THEM DRAMATICALLY FOR THE COURT, OR RESOLVE IT

17   ALTOGETHER, I DON'T KNOW.

18        GO AHEAD, ALEX.

19        THE CLERK:  MAY 29TH AT 2:00 P.M.

20        THE COURT:  DOES THAT WORK FOR BOTH SIDES?

21        MR. PLETCHER:  IT DOES.  THANK YOU, YOUR HONOR.

22        THE COURT:  CERTAINLY.

23        MS. GERBOTH:  THAT'S FINE, YOUR HONOR.  THANK YOU.

24        THE COURT:  VERY WELL.  THANK YOU.

25        MR. ADAMS:  YOUR HONOR, ONE THING I WANT TO --

1          THE COURT:  WHEN WE GET TO THE POINT I HAVE TO RESOLVE

2     THINGS, I AM GOING TO SPECIALLY SET YOU ON A DAY OTHER THAN THE

3     CALENDAR.

4          MR. ADAMS:  OF COURSE, AND THAT MAKES SENSE.

5          THE LAST THINK I WANT TO RAISE IS I THINK BOTH COUNSEL

6     BROUGHT UP THE ISSUE IN THE PAPERS, AND THAT IS THERE IS

7     CLASSIFIED INFORMATION.  I MEAN, THE GOVERNMENT'S CANDIDLY

8     ADMITTED THAT THEY'VE WITHHELD CERTAIN CLASSIFIED EMAILS, AND

9     WE UNDERSTAND THAT.  THERE IS THE CLASSIFIED INFORMATION

10    PROCEDURES ACT, AND MAYBE DURING OUR MEET AND CONFER WE CAN

11    TALK ABOUT HOW WE'RE GOING TO ADDRESS EITHER THE NEED FOR

12    CLASSIFIED INFORMATION IN THE TRIAL OR HOW WE'RE GOING TO

13    HANDLE, UNDER THE ACT, THAT CLASSIFIED INFORMATION, AND WHAT

14    NEEDS TO HAPPEN, YOU KNOW, GOING FORWARD, AND MAYBE WE CAN EVEN

15    START THAT PROCESS, IF NECESSARY.

16         MR. PLETCHER:  OF ALL THE THINGS THAT HAVE BEEN

17    COLLECTED, YOUR HONOR, THE UNITED STATES HAS IDENTIFIED ONLY

18    TWO SOURCES OF CLASSIFIED INFORMATION THAT MIGHT BE RELEVANT

19    HERE, ONE IS COMMANDER MISIEWICZ'S SO-CALLED SIPR ACCOUNT, AND

20    THE OTHER IS THAT OF HIS IMMEDIATE SUPERVISOR DURING THE TIME

21    PERIOD.

22         WE'VE REVIEWED THOSE ACCOUNTS.  WE'VE IDENTIFIED

23    POTENTIALLY 152 RELEVANT DOCUMENTS.  THE UNITED STATES IS

24    WORKING THROUGH THOSE TO SEE WHETHER INFORMATION CAN BE

25    DECLASSIFIED, WHETHER IT, IN FACT, MEETS THE STANDARD IN SEPA,

1    WHICH IS, OF COURSE, NOT THE SAME STANDARD AS IN RULE 16 OR

2    EVEN IN *NIXON* -- IT'S A MUCH, MUCH HEIGHTENED STANDARD -- AND

3    TO SEE HOW WE CAN RESOLVE THAT.  I DON'T KNOW THAT, FRANKLY, I

4    HAVE ANYTHING TO SAY TO MR. ADAMS SUBSTANTIVELY ABOUT THAT

5    ISSUE NOW.  WE MAY TALK ABOUT IT PROCEDURALLY.

6        WITH SEPA, I KNOW THE COURT HAS BEEN THROUGH IT BEFORE,

7    IF WE NEED TO GO DOWN THAT LONG, WINDING, TORTURED ROAD, WE

8    WOULD EXPECT TO MAKE AN EX PARTE SUBMISSION TO THE COURT, AND

9    THEN THE COURT BECOMES INVOLVED EVALUATING THOSE DOCUMENTS, BUT

10   I THINK THAT'S -- SUBSTANTIVELY THAT'S SEVERAL STEPS DOWN THE

11   ROAD.

12       MR. ADAMS:  I WOULD JUST LIKE TO SAY I'M NOT SURE THAT

13   THE ROAD IS ALL THAT LONG AND WINDING.  I'VE BEEN THROUGH IT

14   MYSELF IN THIS COURT -- NOT BEFORE YOUR HONOR -- BUT IT'S

15   MANAGEABLE.  IF IT BECOMES NECESSARY, WE'LL FIGURE OUT HOW TO

16   DO IT.  I JUST WANTED TO MAKE SURE --

17       MR. PLETCHER:  I'M ENCOURAGED BY MR. ADAMS'S OPTIMISM.

18       THE COURT:  WE ALL TRY TO BE OPTIMISTIC.

19       MR. ADAMS:  I'VE NEVER WORKED IN THE GOVERNMENT, SO

20   IT'S EASY FOR ME TO BE OPTIMISTIC.

21       THE COURT:  THANK YOU.  I'LL SEE YOU ON MAY THE 29TH AT

22   2:00 P.M.  MEET AND CONFER IN GOOD FAITH, AS I KNOW YOU WILL.

23       MR. PLETCHER;  THANK YOU, YOUR HONOR.

24       MR. ADAMS:  THANK YOU, YOUR HONOR.

25   (THE HEARING CONCLUDED.)

1                     C E R T I F I C A T E

2


3          I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
4     STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
     ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
5     ABOVE-ENTITLED MATTER ON MARCH 27, 2015; AND THAT THE FORMAT
     USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
6     STATES JUDICIAL CONFERENCE.

7


8     DATED:  JUNE 11, 2015          /S/ GAYLE WAKEFIELD
                                     GAYLE WAKEFIELD, RPR, CRR
9                                    OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25