```
 1                 UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,      .
                                    .
 5               Plaintiff,         . No. 13-cr-3782-JLS
                                    .
 6               v.                 . December 3, 2013
                                    . 2:58 p.m.
 7   MICHAEL VANNAK KHEM            .
     MISIEWICZ,                     .
 8                                  .
                 Defendant.         . San Diego, California
 9   . . . . . . . . . . . . . . . .

10

11                TRANSCRIPT OF BOND HEARING
                BEFORE THE HONORABLE JAN M. ADLER
12               UNITED STATES MAGISTRATE JUDGE

     APPEARANCES:
13

14   For the Government:      United States Attorney's Office
                              By: MARK PLETCHER, ESQ.
15                                ROBERT S. HUIE, ESQ.
                              880 Front Street, Room 6293
16                            San Diego, California 92101

17   For the Defendant:       Law Offices of Wendy S. Gerboth
                              By: WENDY S. GERBOTH, ESQ.
18                            964 Fifth Avenue, Suite 214
                              San Diego, California 92101

19   Also Present:            TISHA GARCIA,
                              Pretrial Services
20

21

22   Transcript ordered by: Mark Adams, Esq.

23   Transcriber:            Chari L. Possell

24   Proceedings Recorded by Electronic Sound Recording;
     Transcript Produced by Transcription
25
```

1          SAN DIEGO, CALIFORNIA; DECEMBER 3, 2013; 2:58 P.M.

2                              -o0o-

3          THE CLERK:  Calling matter Number 9 on the calendar,

4    13-cr-3782, United States of America v. Michael Vannak Khem

5    Misiewicz, on calendar for a bond hearing.

6          MR. PLETCHER:  Good afternoon, Your Honor.  Mark

7    Pletcher and Robert Huie for the United States.

8          THE COURT:  Good afternoon.

9          MS. GERBOTH:  Good afternoon, Your Honor.  Wendy

10   Gerboth appearing on behalf of Michael Vannak Khem Misiewicz.

11   He is now present before the Court on bond.

12         THE COURT:  Good afternoon.  All right.

13      Ms. Gerboth, this is your requested bond hearing.  You

14   have the floor.

15         MS. GERBOTH:  All right.  Thank you.  First of all,

16   Your Honor, I would like to correct -- Mr. Misiewicz's middle

17   name is middle name is spelled incorrectly in court documents.

18   The middle name, Vannak, should be V-A-N-N-A-K instead of E-K.

19   So we would like to correct that for the record.

20         THE COURT:  All right.  Thank you.  So noted.

21         MS. GERBOTH:  All right.  The first issue that I

22   wanted to address is this is a request for Mr. Misiewicz to be

23   able to travel over the Christmas holidays.  What he has

24   proposed to do is to drive from here to Texas, where he will

25   stay with family members in Texas.  From Texas, he is planning

1    to fly to Illinois, where he will stay with family.  His mother

2    is out there.  He also has -- his children are also out in

3    Illinois, as well as other family members.

4         He had originally thought that he was going to fly back

5    from Dallas to -- excuse me -- from Illinois to Texas.  He now

6    believes he is going to be driving with his mother and his

7    children from Illinois to Texas, and then he will drive from

8    Texas back to San Diego.  So there would be one leg of the trip

9    that would involve flying, and that would be the leg from Texas

10   to Illinois.

11        What he would like to do is go from the 19th of December

12   until the 31st of December, a 12-day trip.

13             THE COURT:  All right.  Thank you.

14        What is the government's position on this requested

15   modification?

16             MR. HUIE:  Your Honor, we don't oppose

17   Mr. Misiewicz's holiday travel.  I believe Pretrial Services

18   may have an issue with regard to monitoring on the plane, but

19   that's subject to their -- their views.

20             THE COURT:  All right.  Good afternoon, Ms. Garcia.

21             PRETRIAL SERVICES OFFICER:  Good afternoon, Your

22   Honor.  Tisha Garcia on behalf of Pretrial Services.

23        As Your Honor knows, we do object to defendants on the

24   location monitoring flying and actually traveling out of state.

25   It goes against the general rules of the program, which are

1   that officers are to respond immediately to any key alerts,

2   such as tampering, and actually put visible eyes on the unit.

3   The issue with the flying is that the GPS and the components

4   actually shut down during the flight, and so there would be no

5   way -- the Court would essentially be trusting him during the

6   flight to remain in compliance, and there won't really be

7   anybody on the other end to check him in and see that

8   everything was okay.

9       So for those reasons, we do -- we don't agree to the

10   travel that's being proposed.

11           THE COURT:  I take it you don't have a problem with

12   the driving parts of the --

13           PRETRIAL SERVICES OFFICER:  The driving parts of it,

14   Your Honor, is just that he is out of reach.  If there were --

15   basically, if there were to be any problem during either the

16   driving or flying, it may take several hours for pretrial to be

17   able to respond to it.  We may have to coordinate for him to

18   check into another pretrial office, and that would be subject

19   to their office's availability.  So just based on the general

20   components of what the location monitoring program entails, we

21   are not going to agree to it.

22       On the other hand, his case is not a mandatory location

23   monitoring program case.  It is not a case which requires, by

24   law, that he be under the location monitoring program.  So we

25   would defer to the Court, whatever Your Honor feels is

1   appropriate.

2       I would note that twice he has driven from Denver,

3   Colorado, to San Diego -- once for court and once to actually

4   move here -- without incident.

5           MS. GERBOTH:  Your Honor, if I could correct that,

6   Mr. Misiewicz did fly.  He has flown twice before, already,

7   while he has been on the GPS, Your Honor.

8           PRETRIAL SERVICES OFFICER:  Your Honor -- I am sorry,

9   Your Honor.  That's actually true.  He had a morning flight

10  where he flew directly in from Denver and then flew back the

11  same night.

12          THE COURT:  Thank you.

13      So pretrial has an issue as to the flying component of

14  the -- of the trip.

15      Mr. Huie, does the government have any objection based on

16  the concerns articulated by pretrial?

17          MR. HUIE:  No.  We defer to the Court.

18          THE COURT:  All right.  And Ms.Gerboth, do you want

19  to respond to the concerns articulated by Ms. Garcia both as to

20  the driving and flying parts of the trip?

21          MS. GERBOTH:  Well, Your Honor, I think, first of

22  all, the fact that Mr. Misiewicz already has both driven and

23  flown from one jurisdiction to the other has shown that he's

24  been compliant and done what he was supposed to do, and I think

25  that that past performance speaks volumes and is certainly the

1   best indicator of how he would -- how he would function going

2   forward.

3      Certainly, if the Court were to impose a condition and

4   Pretrial Services was available, he would not object to

5   checking in with Pretrial Services' offices at the

6   jurisdictions where he is, assuming that they are open over the

7   holidays on the particular days.  But he would not have an

8   objection to doing that.

9      THE COURT:  Ms. Garcia, as the expert on this, what

10   would that involve?

11      PRETRIAL SERVICES OFFICER:  To have him check in?

12   Your Honor, the only concern that I really have is if it were

13   to go into, say, a tamper status or have a malfunction.  If it

14   happens here in the district -- and I know I have explained

15   this to the Court before -- we are required to go respond to

16   it, and that might be late at night, that would be on the

17   weekend.  We just wouldn't have that ability if he is out of --

18   out of our jurisdiction, so it would be attempting to contact

19   an officer.

20      If Your Honor wants him just to check in, that -- and it's

21   during business hours, that's not a problem.  We can arrange

22   that in Texas and in Illinois.

23      So the concern of ours is just responding as we are

24   required to, per our location monitoring guidelines, during the

25   nights or during the nonbusiness hours type of things.

1          THE COURT:  Are you suggesting that he could be

2    required to -- it would be logistically feasible to have him

3    check in with a local Pretrial Services office in each

4    jurisdiction as he arrives there?

5          PRETRIAL SERVICES OFFICER:  Maybe not as he arrives,

6    but as quickly as possible, during a business hour.  I believe

7    we could -- we could ask them to do us that -- basically, a

8    favor.

9          THE COURT:  Okay.

10         PRETRIAL SERVICES OFFICER:  Just to see him and check

11   to make sure that the anklet is still on.

12         THE COURT:  Okay.  Thank you.

13     Ms.Gerboth, what are the -- you said there's a time period

14   of December 19th to December 31st.  What are the dates in each

15   jurisdiction?  Can I have that?

16         MS. GERBOTH:  We don't yet because he hasn't made the

17   reservations, obviously, pending the Court's decision.

18         Tentatively, I believe he was going to drive on the 19th;

19   stay three days in Texas; then fly from the -- fly to Illinois;

20   be in Illinois from the 22nd to the 29th; and then come back to

21   Texas -- drive back to Texas on the 29th; be there overnight or

22   for two days; and then drive back to San Diego, to be back by

23   the 31st.  (Pause.)

24         THE COURT:  Okay.  So what I am providing is that the

25   defendant will be allowed to travel between December 19th and

1    December 31st to the following jurisdictions:  First to Texas

2    via car, then from Texas to Illinois via plane, and then from

3    Illinois back to Texas via car, and from Texas back to the

4    Southern District of California by car.

5         The defendant is to check in with the local Pretrial

6    Services office in each jurisdiction after his arrival in each

7    jurisdiction.

8         Okay.  Anything further on that?

9         MS. GERBOTH:  No, Your Honor.  Just -- if for some

10   reason the dates move one day either way, if it's okay with

11   Pretrial Services, provided it's cleared -- for example, if the

12   planes are not available -- would it be okay to have those date

13   slightly flexible as long as it's preapproved by Pretrial

14   Services?

15             THE COURT:  Any objection from the government?

16             MR. HUIE:  No, Your Honor.

17             THE COURT:  And anything from pretrial on that?

18             PRETRIAL SERVICES OFFICER:  No, Your Honor.  I just

19   would like the flexibility to allow him to check in at the

20   soonest possible date when in those districts.  I did note

21   that -- I don't know if he would be able to check back in in

22   Texas before coming back to San Diego -- if they are open.  So

23   just if the Court is okay with that, if they are no -- if it is

24   not -- if we are not able to set it up, that it's okay that he

25   not check in, but it's cleared through me.

1          THE COURT:  Okay.  So I have added that he would

2     check in with the local Pretrial Services office in each

3     jurisdiction on the soonest possible date.

4          PRETRIAL SERVICES OFFICER:  Yes, Your Honor.  Thank

5     you.

6          THE COURT:  After arriving?  Okay.

7     And I will provide that the defendant is to provide

8     Pretrial Services with his itinerary when it is set and before

9     travel commences.

10    All right.  Okay.  So that issue is now resolved.

11    Next issue?

12         MS. GERBOTH:  All right.  Thank you.

13    The next issue is with respect to -- Mr. Misiewicz is on

14    GPS monitoring, of course, as the Court knows.  He currently is

15    on home detention condition of GPS monitoring, which means that

16    he has to submit in advance to Pretrial Services a schedule

17    detailing where he is going to go for the following week, and

18    then is restricted to those -- those things that have been

19    preapproved by Pretrial Services.

20    We would like to have that condition modified.  We have no

21    objection to continuing with the GPS.  But instead of the home

22    detention condition, we would ask that it be changed to a

23    curfew.  I think that the least restrictive means necessary is

24    appropriate.  And particularly because he is on active GPS

25    monitoring, I think the incremental protection between a curfew

10

1    and home detention is fairly small.  So we would request that

2    the Court modify it to a curfew condition, with a curfew being

3    set at ten o'clock.

4             THE COURT:  So the hours of the curfew would be

5    between 10:00 p.m. and --

6             MS. GERBOTH:  And 6:30 a.m.

7             THE COURT:  All right.  Thank you.

8        May I have the government's position, please?

9             MR. HUIE:  Your Honor, we don't oppose moving to a

10   GPS with a curfew arrangement; however, for the exact hours of

11   the curfew, we defer to pretrial.  Maybe 8:00 p.m. is a more

12   typical curfew arrangement.

13            THE COURT:  May I hear from pretrial?

14            PRETRIAL SERVICES OFFICER:  Your Honor, I don't

15   object to changing him to a curfew.  Right now, he is on kind

16   of an open schedule, preapproved for certain activities, and

17   what we had discussed was his time is out until 8:00.  I think

18   defense counsel is asking for time out until 10:00.  I don't

19   have any objection to that.

20            THE COURT:  Is 10:00 more likely to be the time that

21   would be applicable than 8:00?

22            MS. GERBOTH:  It would certainly give him more

23   flexibility, yes.

24            THE COURT:  Given that, does the government have any

25   objection to a 10:00 p.m.?

```
1              MR. HUIE:  We do think an 8:00 p.m. curfew would be
2    appropriate.  I am not sure what business needs to be done
3    between 8:00 to 10:00.  But we will defer to the Court.
4              THE COURT:  All right.  Thank you.
5         Can you articulate why he would need between 8:00 and
6    10:00, just for the record, please?
7              MS. GERBOTH:  I mean, there is no specific purpose
8    other than it just -- it gives him more flexibility, and I
9    don't think that an eight o'clock curfew is necessary.  I think
10   ten o'clock is appropriate as well.
11             THE COURT:  Ten o'clock is not uncommon?
12             PRETRIAL SERVICES OFFICER:  No.  Actually, Your
13   Honor, it's more the common time that the courts generally set.
14        But I guess my only concern is we -- I have approved him a
15   little bit later than 10:00 for special requests before, so at
16   this point, we wouldn't have any discretion to change it; he
17   has to be in every night by 10:00 p.m., and I just want him to
18   be aware of that.
19             THE COURT:  Thank you.
20             MS. GERBOTH:  Or, Your Honor, could we would do
21   ten o'clock but possibly, but with Pretrial Services' advance
22   permission, on special occasions, if they grant it?
23             THE COURT:  Any objection by the government to that?
24             MR. HUIE:  Well, we continue to think 8:00 p.m. is a
25   reasonable curfew.
```

1          THE COURT:  You are staying with 8:00 p.m.?

2     Ms. Garcia?

3          PRETRIAL SERVICES OFFICER:  I defer to the Court,

4     Your Honor.

5          And the only other question I have is is he excused from

6     curfew during his travel times?  Or once he arrives in his

7     destinations for the holidays, I would assume he needs to be in

8     at 10:00 p.m., at the relatives' household?

9          THE COURT:  Can he be in at 10:00 p.m.?  Seems like

10    that's a reasonable condition.

11         MS. GERBOTH:  Yes, that's fine, Your Honor.  Yes.

12    That's fine.

13         THE COURT:  So the curfew will apply, then, during

14    the period of the travel we discussed earlier.

15         All right.  So I am going to change the -- one aspect of

16    the location monitoring program.  Instead of home detention, it

17    will be a curfew.  Of course the defendant will remain on GPS

18    monitoring.  Curfew will be between 10:00 p.m. and 6:30 a.m.

19         If the defendant wishes to extend the curfew beyond

20    10:00 p.m. on any occasion, he must receive prior permission of

21    Pretrial Services to do so, and the curfew will apply during

22    the defendant's holiday travel.  Okay.

23         Next issue?

24         MS. GERBOTH:  All right.  Finally, Your Honor, is

25    with respect to -- it's one of the standard conditions of

1    release.  It's condition 7(g), which requires Mr. Misiewicz to

2    avoid all contact, directly or indirectly, with any person who

3    is or may be a victim or witness in the investigation or

4    prosecution.

5         In the circumstances of this case, I am a little bit

6    concerned because there were certain people -- Mr. Misiewicz is

7    still in the military.  He still does have contact with certain

8    people who may be witnesses to the investigation, to the

9    prosecution.  We don't know.

10        We would like to contact people during the course of our

11   investigation, and in some cases, I would like to have

12   Mr. Misiewicz participate in the interviews of certain

13   witnesses because he has access to the military technology and

14   things that I may need to have somebody with me who can do that

15   in the course of our investigation and speaking to witnesses.

16   I don't want there to be any inadvertent contact with somebody

17   that the government would later claim is a witness to the

18   investigation or prosecution.

19        What I would request -- it already is limited to

20   codefendants, and that's certainly fine.  We wouldn't expect

21   him to be contacting any of the defendants.  They are also

22   represented by counsel.  But I would ask that the government

23   provide us with a list of the people that they consider to be

24   witnesses in their investigation or prosecution so that we can

25   make sure that Mr. Misiewicz does not inadvertently come in

1   contact with someone.

2       Also, if this condition were interpreted broadly -- and I

3   don't think anybody is suggesting it would be -- but

4   technically -- his family members are mentioned in the

5   complaint, some of his family members.  Certainly, I don't

6   believe there is any intention that he would not be able to

7   communicate with family members.

8       And also, I wanted to certainly clarify, and I am sure

9   this is the case, that doesn't preclude him indirectly

10  contacting -- it wouldn't prevent either myself or my

11  investigator from speaking with witnesses.

12          THE COURT:  Okay.  I want to make sure I understand

13  exactly what your requested modification is.

14      Obviously, you had indicated that you understand no

15  contact with codefendants.  But you are talking about him being

16  able to be in contact with certain witnesses, and talking about

17  the government providing you with a list.  So which -- I am not

18  asking you to identify witness A, B, C, D, E, or F at this

19  time, but what exactly is it that you are seeking?

20          MS. GERBOTH:  What I would seek from the government

21  is a list of people that they consider to be their witnesses or

22  witnesses to the prosecution or to the investigation that he is

23  to avoid contact with.  That way, we will make sure that it's

24  clear who he is and is not supposed to be in contact with.

25          THE COURT:  So you are saying, other than that list

15

1    of government witnesses, he, in your view, should be permitted

2    to have contact with other witnesses?

3              MS. GERBOTH:  Correct.

4              THE COURT:  All right.  Mr. Huie?

5              MR. HUIE:  Your Honor, this is a standard condition.

6    I think to the extent Mr. Misiewicz interprets it in common

7    sense and good faith, there wouldn't be a problem.  I don't see

8    this condition as preventing him from interacting with his

9    family.  I don't see it as preventing him from doing his job,

10   interacting with people on the job in a job-related function.

11        I do think this standard condition would prevent him from

12   interviewing witnesses as witnesses in this case.

13        I have never confronted a request to turn over our

14   prospective witness list this early in the case, and we submit

15   that that would be -- that would be premature.  This being a

16   standard condition, it's my view that if Mr. Misiewicz just

17   follows it to the best of his ability, that there wouldn't be

18   any problems with the government, and potentially not with

19   pretrial either.

20             THE COURT:  What is your position -- if there is a

21   particular witness that Ms. Gerboth feels it is essential that

22   Mr. Misiewicz have contact with, how would you regard that?

23   What would your position be?

24             MR. HUIE:  Well, if the question is whether that

25   person is a witness or not, she is certainly free to contact

1    us.  We could provide an answer.

2         If the question is this person has been identified as a

3    witness -- for example, individuals named in the complaint --

4    should the defendant be allowed to then go and interview them,

5    it is our view that that should not be the case; that the

6    standard condition should apply.

7             THE COURT:  Ms. Gerboth?

8             MS. GERBOTH:  Your Honor, when I talk about -- I

9    don't plan on sending Mr. Misiewicz out on his own to go

10   interview witnesses.  What I am talking about is if myself or

11   my investigator is interviewing a witness, and we think

12   Mr. Misiewicz's presence would be helpful in interviewing that

13   witness, we think that he should be able to be present.  So

14   that's what I am talking about when I mean Mr. Misiewicz being

15   present for interviews of witnesses.

16            THE COURT:  Mr. Huie?

17            MR. HUIE:  We have no objection to Ms. Gerboth or her

18   investigator interviewing witnesses.  We just object to

19   Mr. Misiewicz being a part of that process; that is, in the

20   room with the witness.

21            THE COURT:  So you object to him being present at the

22   interview of any witness?

23            MR. HUIE:  Yes, your Honor.  Just consistent with the

24   standard condition, 7(g).

25            THE COURT:  Does pretrial have anything to add?

17

1        PRETRIAL SERVICES OFFICER:  I don't believe so, Your

2   Honor.  I -- sometimes we do have the conditions that he is

3   allowed if counsel is present.  I don't know if that was --

4   these conditions were set by Colorado, so I don't know if that

5   was part of it or not.

6        THE COURT:  They were.  They were set by Colorado and

7   adopted by Judge Crawford.

8      Well, Ms. Gerboth, I think it boils down to this:

9   Mr. Huie feels that there's no problem, obviously, with you or

10  your investigator interviewing witnesses, of course, but he

11  objects to Mr. Misiewicz being present at any of those

12  interviews.

13     Do you want to respond to that?

14       MS. GERBOTH:  Well, one thing -- first of all, I

15  would like clarification.  When we are referring to witnesses,

16  I am assuming this is just meaning prosecution witnesses.  I am

17  assuming that to the extent that we have witnesses that this

18  doesn't apply to defense witnesses.  But that's one of the

19  points that I think is -- creates an issue because we may

20  consider somebody our witness and the government may consider

21  them their witness, and if I want to have Mr. Misiewicz present

22  to be able to interview that witness, I would like to be able

23  to do that.

24       THE COURT:  What is the government's problem with

25  Mr. Misiewicz being present at the interview of a witness?

18

```
 1            MR. HUIE:  Well, I think our problem, Your Honor, is
 2    the possibility of undue influence, and I think what is
 3    captured by the standard condition is the issue of the
 4    defendant interviewing, exerting influence on witnesses.  If he
 5    is physically present and not communicating with them, that may
 6    not be an issue.  But to the extent he is physically there, it
 7    makes it very, very likely that he is going to be, himself,
 8    having contact with these witnesses.
 9            THE COURT:  So it is a matter of influencing, unduly
10    influencing witnesses, in your view?
11            MR. HUIE:  Yes, Your Honor.
12            THE COURT:  Ms. Gerboth?
13            MS. GERBOTH:  Well, Your Honor, myself or my
14    investigator would certainly, present and would be able to
15    monitor that situation, and I don't think that that would
16    become an issue with either myself or my investigator present.
17            THE COURT:  Why do you feel he would need to be
18    present?
19            MS. GERBOTH:  Your Honor, for example, some of the --
20    the witnesses, obviously, that we were going to be interviewing
21    are going to be military witnesses.  We have already come
22    across things where, even with my conversations with
23    Mr. Misiewicz, I am discussing something with him and I need
24    clarification on certain military terms and things that are
25    happening.
```

```
 1        I would like to have him -- and he -- and he will know the

 2   correct questions to ask sometimes, where I don't.  And some of

 3   these things we can go over in advance when we are talking

 4   about what we are going to interview -- when we are speaking

 5   about interviewing a witness, but he may have follow-up

 6   questions based on his knowledge and his background that I or

 7   my investigator might not necessarily have.  So to have him

 8   physically present, where he can assist me or guide me or my

 9   investigator in follow-up questions would be very helpful in

10   this case.

11        THE COURT:  Mr. Huie?

12        MR. HUIE:  Your Honor, I have nothing to add.  We are

13   jest advocating the application of the standard condition to

14   this case, as in others.

15        THE COURT:  The only concern I have heard you

16   articulate is that the presence of Mr. Misiewicz might create

17   some undue influence on a witness.  I am not sure how that can

18   be ameliorated other than to trust that your counterpart,

19   Ms. Gerboth, and her investigator will make sure that doesn't

20   happen.  But the presence of Mr. Misiewicz at an interview, in

21   and of itself, is that problematic?

22        MR. HUIE:  No, Your Honor.

23        THE COURT:  And Ms. Gerboth, what steps would you

24   articulate on the record you would take to address the concern

25   that Mr. Huie did mention?
```

1          MS. GERBOTH:  Well, first of all, we would discuss in

2     advance what -- what were the appropriate scope of the

3     interview and what questions we were going to be asking and the

4     areas that we would go into.

5          Once in there, I would probably request that

6     Mr. Misiewicz, to the extent that he wanted certain questions

7     to be asked, would speak to myself or my investigator in

8     private and not directly to the witness.

9          It also may depend on the witness's reaction as well.  If

10    the witness is clearly uncomfortable, we might not -- we might

11    ask Mr. Misiewicz not to be there.  If the witness is clearly

12    comfortable with his presence there, then I might let him

13    become more involvement.  But we would certainly -- myself and

14    my investigator would be there to be able to monitor the

15    situation.

16          MR. HUIE:  Your Honor, my only other proposal is that

17    to some degree we are dealing with this question in a vacuum.

18    It may make sense to also address it on a case-by-case basis as

19    it comes up with particular witnesses.  There may be situations

20    where our concerns about undue influence are more pronounced or

21    less pronounced.  So that would be another alternative.

22          MS. GERBOTH:  And I would look at that as being an

23    interference in our attorney work product.

24          THE COURT:  Yeah, I think that does raise a work

25    product concern, because then you will know who -- if you are

1   saying you should be able to have a veto or be able to have

2   some input in that and that Ms. Gerboth would be required to

3   tell you who she is interviewing, I think that does go to core

4   attorney work product, doesn't it?

5           MR. HUIE:  It may, Your Honor.

6           THE COURT:  And then I think the final question I

7   have about this, before I rule is, there has been a suggestion

8   by Ms. Gerboth that you provide her with a list of witnesses

9   who you feel that are off limits.  You have pointed out that

10  it's early in the case to be providing such a list.  And yet, I

11  think she articulates a legitimate concern about not wanting to

12  have Mr. Misiewicz in the presence of witnesses who the

13  government would consider to be -- where the government would

14  consider that to be objectionable.  So how can that be

15  addressed?

16          MR. HUIE:  Your Honor, maybe the way to do it is,

17  rather than the government being ordered to provide a potential

18  witness list at the outset, we could give the government the

19  option of providing a list, and maybe even supplementing it, of

20  names that we have concerns about the defense interviewing with

21  the defendant present or participating.  That might be one way

22  to proceed.  In other words, we wouldn't have to come up with

23  such a list, but if we did, that would be something we could

24  put into the conversation.

25          THE COURT:  Well, this is a very tough on to draw

1    lines around.  I am struggling a little bit here.

2       Ms. Gerboth, I understand why you would like your client

3    to be present at certain interviews, and yet there is a

4    legitimate concern expressed by Mr. Huie about potential undue

5    influence, intimidation.  I am not saying that would happen,

6    but it is conceivable that it could.  How do we draw a line

7    around that?

8            MS. GERBOTH:  Well, I think the Court is going to

9    have to rely on the professionalism of both myself and my

10   investigator.  I don't think there is any way we can guarantee,

11   other than we will as professionals exert our influence and

12   make sure that it doesn't become an issue.

13           THE COURT:  This is the entire reason for this kind

14   of condition being put into effect as a standard condition, is

15   it not?

16           MS. GERBOTH:  It is, Your Honor.  But I think that

17   there's a difference between him contacting witnesses on his

18   own or him contacting witnesses -- I don't want to say

19   supervision, but where he would be the assistant in the -- in

20   the interview.  He is not going to be the person conducting the

21   interview, it would be myself or -- or more likely, my

22   investigator.

23           MR. HUIE:  Your Honor, if I could add one area where

24   I think undue influence might enter into this case in a way it

25   wouldn't in other cases, is to the extent Commander Misiewicz,

1   a senior naval officer, is going to be interviewing naval

2   personnel junior to him in rank, that might be a situation

3   where we would prefer that interview to be conducted by

4   Ms. Gerboth or her investigator rather than having him

5   participate in that sort of witness questioning.

6          THE COURT:  I think maybe the best way to address

7   this is for Mr. Misiewicz to be consulted by Ms. Gerboth and

8   her investigator in advance of any interview, and then, during

9   any interview, he could certainly suggest to her or her

10  investigator what inquiry should be made.  But I think all of

11  that can be accomplished without him having to address,

12  himself, the witness.

13          MS. GERBOTH:  I would agree with that, Your Honor.

14          MR. HUIE:  That's fine with us, too.

15          THE COURT:  And Ms. Gerboth, I take it you would be

16  present at any such interview?

17          MS. GERBOTH:  Yes.  I or my investigator.  And the

18  investigator is Apolinar Severia.

19          THE COURT:  Are you -- do you feel there is any

20  problem if Ms. Gerboth is not present and only the investigator

21  is?

22          MR. HUIE:  No, Your Honor.

23      (Pause.)

24          THE COURT:  All right.  Let's see if I have drawn

25  these lines that in a way that will get the job done.  I think

1  it will.

2      The defendant is allowed to present at interviews of

3  witness so long as counsel and/or an investigator for --

4  retained by counsel is present and the defendant does not

5  address the witness.  The defendant may be consulted by counsel

6  and/or the investigator before and/or during the witness

7  interviews but must not address the witness himself.  The

8  government may provide a list of its witnesses to defendant --

9  defense counsel.  As to any such witnesses, the defendant is

10 not to be present.

11          MR. HUIE:  That's fine with us.  Thank you, Your

12 Honor.

13          MS. GERBOTH:  That's fine, Your Honor.  I think that

14 covers it.

15          THE COURT:  All right.  Thank you.

16      All right.  Anything further?

17          MS. GERBOTH:  Your Honor, Mr. Misiewicz reminded me

18 of one thing.  With respect to his curfew, he currently has --

19 his travel was originally restricted to Colorado and

20 California.  I don't think we need Colorado at this point.  But

21 geographically, does Pretrial Services have an area within

22 California -- and I don't see him going to San Francisco

23 without notifying them -- but to what extent do they want a

24 geographical restriction for the curfew?

25          PRETRIAL SERVICES OFFICER:  And Your Honor, actually,

1    his conditions were California for court purposes only, so I

2    just think we need clarify what his travel restriction is, is

3    what I had expressed to the defendant.

4        Obviously, if he has to be back in his residence by

5    10:00 p.m., he is not going to be staying overnight and

6    therefore not able to travel too far outside of the

7    jurisdiction.

8            THE COURT:  Right.  Does anything further need to be

9    added in your view?

10           PRETRIAL SERVICES OFFICER:  I just think the Court

11   needs to clarify, maybe, he is allowed to travel in California

12   but must abide by the location monitoring program rules.

13       So just that travel is modified just to the state of

14   California, except for the allowed travel for the holiday.

15   Right?

16           MS. GERBOTH:  That's fine.

17           PRETRIAL SERVICES OFFICER:  We don't need Colorado

18   anymore.

19           MS. GERBOTH:  Yes.  That's correct.

20           THE COURT:  He will not be in Colorado anymore?  Is

21   that correct?

22           MS. GERBOTH:  No, Your Honor.

23           THE COURT:  Okay.  (Pause.)

24       Okay.  So I have indicated that defendant's travel is

25   restricted to the state of California.  I have indicated he

1    cannot enter Mexico.  Except he may travel outside of

2    California for the holiday travel we have discussed and which I

3    have previously indicated on the record.  The defendant is to

4    abide by the location monitoring program requirements while

5    traveling in California.  All right?

6        Anything else?

7                MS. GERBOTH:  That's all.

8                THE COURT:  Thank you.

9                MR. HUIE:  Thank you, Your Honor.

10               PRETRIAL SERVICES OFFICER:  Thank you, Your Honor.

11               THE CLERK:  Court is now in recess.

12       (End of proceedings at 3:39 p.m.)

13                           -o0o-

14                C-E-R-T-I-F-I-C-A-T-I-O-N

15

16        I certify that the foregoing is a true and correct

17   transcript from the electronic sound recording of the

18   proceedings had in the aforementioned cause.

19           DATED:  February 29, 2016, at San Diego,

20   California.

21

22                    /s/  Chari L. Possell
                    _____
23                    Transcriber

24

25